**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-00200-PAB-CBS

(Consolidated with Civil Action Nos. 09-cv-00215-PAB-CBS; 09-cv-00296-PAB-CBS and 09-cv-00606-PAB-CBS)

In re LEVEL 3 COMMUNICATIONS, INC. SECURITIES LITIGATION

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION
TO DISMISS PLAINTIFF'S CONSOLIDATED COMPLAINT (DOCKET NO. 74)**

---

# TABLE OF CONTENTS

**Page**

I.　　BACKGROUND TO DEFENDANTS' FRAUD ................................................................1

II.　　STANDARD ON A MOTION TO DISMISS ....................................................................5

III.　　DEFENDANTS' FALSE STATEMENTS ARE ACTIONABLE UNDER
　　　　SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 ....................................5

　　　　A.　　The Complaint Pleads with Particularity that Defendants' Statements
　　　　　　　About the Integration Were False and Misleading When Made ............................6

　　　　B.　　Defendants' Statements Were Material ..................................................................10

IV.　　THE COMPLAINT ADEQUATELY PLEADS DEFENDANTS' SCIENTER ...............12

　　　　A.　　The Complaint Sufficiently Alleges Defendants' Knowledge of the
　　　　　　　Undisclosed Facts as Well as Their Direct Access to Those Facts ......................12

　　　　B.　　Defendants' Post-Class Period Admissions Further Support a Strong
　　　　　　　Inference of Scienter ............................................................................................14

　　　　C.　　The Complaint Contains Additional Allegations Further Supporting a
　　　　　　　Strong Inference of Scienter ................................................................................15

　　　　　　　1.　　Defendants Were Motivated to Artificially Inflate Level 3's Stock
　　　　　　　　　　Price to Consummate the Broadwing Acquisition and Refinance
　　　　　　　　　　the Company's Debt ..................................................................................15

　　　　　　　2.　　Defendants Held the Top Positions at Level 3 and Their Alleged
　　　　　　　　　　Fraud Concerned Level 3's Core Operations .............................................16

　　　　　　　3.　　Crowe, O'Hara, Patel, and Miller Were Motivated to Conceal the
　　　　　　　　　　Truth Because Their Compensation Was Directly Tied to Level 3's
　　　　　　　　　　Success in Integrating the Acquired Businesses ........................................17

　　　　　　　4.　　Defendants' Unlawful Class Period Insider Trading Supports a
　　　　　　　　　　Strong Inference of Scienter .....................................................................18

V.　　THE COMPLAINT MEETS THE PLEADING REQUIREMENTS FOR LOSS
　　　　CAUSATION ................................................................................................................18

VI.　　THE COMPLAINT ADEQUATELY ALLEGES CLAIMS FOR §20(a) ......................19

**Page**

VII.    CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Kinder-Morgan, Inc.*,
    340 F.3d 1083 (10th Cir. 2003) ...................................................................3, 13

*Alpine Bank v. Hubbell*,
    555 F.3d 1097 (10th Cir. 2009) .......................................................................10

*Angres v. Smallworldwide PLC*,
    94 F. Supp. 2d 1167 (D. Colo. 2000)................................................................8

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) .........................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................5

*City of Phila. v. Fleming Cos.*,
    264 F.3d 1245 (10th Cir. 2001) ...........................................................5, 12, 15

*Croker v. Carrier Access Corp.*,
    No. 05-cv-01011-LTB-OES,
    2006 U.S. Dist. LEXIS 48603 (D. Colo. July 18, 2006) ................................15, 16, 17, 18

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005).......................................................................................5, 18

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
    352 F.3d 367 (9th Cir. 2003) ...........................................................................10

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997) ..................................................................10, 11

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) ......................................................................11, 15

*In re Aetna Inc. Sec. Litig.*,
    34 F. Supp. 2d 935 (E.D. Pa. 1999) .................................................................10

*In re BISYS Sec. Litig.*,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005)...............................................................11

**Page**

*In re Countrywide Fin. Corp. Sec. Litig.*,
        588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................16

*In re GlenFed, Inc. Sec. Litig.*,
        42 F.3d 1541 (9th Cir. 1994) ............................................................................6

*In re Guilford Mills, Inc. Sec. Litig.*,
        No. 98 Civ. 7739 (CLB),
        1999 U.S. Dist. LEXIS 21690 (S.D.N.Y. July 21, 1999) .................................18

*In re Honeywell Int'l Inc. Sec. Litig.*,
        182 F. Supp. 2d 414 (D.N.J. 2002) ..................................................................10

*In re ICG Commc'ns. Sec. Litig.* ..........................................................................14
        No. 00-RB-1864 (BNB),
        2006 U.S. Dist. LEXIS 6695 (D. Colo. Feb. 7, 2006) ......................................14

*In re JPMorgan Chase & Co. Sec. Litig.* ..............................................................17
        MDL No. 1783,
        2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007) ..................................17

*In re Merck & Co. Sec. Litig.*,
        432 F.3d 261 (3d Cir. 2005) ..............................................................................3

*In re Motorola Sec. Litig.*,
        505 F. Supp. 2d 501 (N.D. Ill. 2007) ...............................................................19

*In re Nash Finch Co. Sec. Litig.*,
        502 F. Supp. 2d 861 (D. Minn. 2007) ...........................................................9, 10

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
        387 F. Supp. 2d 1130 (D. Colo. 2005) ........................................................11, 12

*In re Razorfish, Inc. Sec. Litig.*,
        No. 00 CIV. 9474 (JSR),
        2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001) .................................................10

*In re Rhythms Sec. Litig.*,
        300 F. Supp. 2d 1081 (D. Colo. 2004) ...............................................................6

*In re Scholastic Corp. Sec. Litig.*,
        252 F.3d 63 (2d Cir. 2001) .................................................................................8

**Page**

*In re Sprint Corp. Sec. Litig.*,
  232 F. Supp. 2d 1193 (D. Kan. 2002) .............................................................10

*In re Storage Tech. Corp. Sec. Litig.*,
  147 F.R.D. 232 (D. Colo. 1993) ...................................................................20

*In re Williams Sec. Litig.*,
  339 F. Supp. 2d 1242 (N.D. Okla. 2003) ...........................................5, 6, 11, 19

*In re Williams Sec. Litig. – WCG Subclass*,
  558 F.3d 1130, 1140 (10th Cir. 2009) .......................................................5, 19

*Institutional Investors Group v. Avaya, Inc.*,
  564 F.3d 242 ...........................................................................................8

*Maher v. Durango Metals*,
  144 F.3d 1302 (10th Cir. 1998) ...................................................................20

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ......................................................................17

*McDonald v. Kinder-Morgan, Inc.*,
  287 F.3d 992 (10th Cir. 2002) .......................................................................5

*N.J. v. Sprint Corp.*,
  314 F. Supp. 2d 1119 (D. Kan. 2004) ............................................................12

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) .......................................................................6

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000)........................................................................11

*Pirraglia v. Novell, Inc.*,
  339 F.3d 1182 (10th Cir. 2003) .........................................................3, 10, 13

*Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*,
  2 F. Supp. 2d 1345 (D. Colo. 1998)..........................................................4, 15

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)......................................................................9, 10

**Page**

*Schaffer v. Evolving Sys., Inc.*,
    29 F. Supp. 2d 1213 (D. Colo. 1998) ...........................................................................8, 11

*Schwartz v. Celestial Seasoning, Inc.*,
    124 F.3d 1246 (10th Cir. 19997) ...................................................................................2, 5

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
    365 F.3d 353 (5th Cir. 2004) ...........................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................................12

*The Sorkin, LLC v. Fischer Imaging Corp.*,
    No. 03-cv-00631-RPM,
    2005 U.S. Dist. LEXIS 19934 (D. Colo. June 21, 2005) .................................................18

*W. Palm Beach Firefighters' Pension Fund v. Startek Inc.*,
    No. 05-cv-01265-WDM-MEH,
    2008 U.S. Dist LEXIS 47748 (D. Colo. Mar. 28, 2008) .................................................10

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
    No. 05-cv-1265-WDM-MEH,
    2008 U.S. Dist. LEXIS 90278 (D. Colo. Nov. 6, 2008) ...............................................9, 18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78t(a) ..............................................................................................................................19
    §78u-4(b)(1)(B) ...................................................................................................................5
    §78u-4(b)(2) ......................................................................................................................12

Federal Rules Civil Procedure
    Rule 15(a) .........................................................................................................................20
    Rule 12(b)(6) ................................................................................................................5, 14

17 C.F.R.
    §240.10b-5 .....................................................................................................................5, 20

I.    **BACKGROUND TO DEFENDANTS' FRAUD**

From October 17, 2006 through October 23, 2007 (the "Class Period"), defendants repeatedly assured the market the WilTel integration was complete, on schedule and under budget (¶¶88, 92, 96-97, 100), while concealing from investors that the critical work of integrating the inventory control and provisioning systems of WilTel had not even been mapped, let alone actually integrated into the Company's operations ¶¶44, 46-50, 58-63.[1] Defendants' statements regarding the WilTel integration were critically important because they led Level 3's shareholders and securities analysts to believe that Level 3 would be able to successfully integrate the Broadwing Corporation – another major Internet long-haul provider – immediately after its acquisition in January 2007. The falsity of defendants' Class Period statements cannot be disputed.

When defendants falsely told the market they had "completed the majority of integration efforts from WilTel" and they were "85%, 90% done with those efforts," Level 3 had failed to even begin the middle office integration, conservatively the middle 33% of the WilTel integration – *i.e.*, the network inventory and provisioning processes – let alone complete the first third of the work. ¶¶17-18, 44, 46-50, 58-63. Moreover, saying they were 85%-90% complete indicates the Company was already working on the back office, the final third of the integration which Level 3 did not even begin work on until late 2008 and which is not even complete today. ¶47. Because defendants falsely told the market the WilTel integration was almost complete and the other integrations were on track, analysts concluded that they had laid the groundwork to successfully integrate Broadwing. ¶¶91, 95. After the Class Period, defendants revealed that Level 3 had not integrated WilTel, the

---

[1]    All references to Consolidated Class Action Complaint for Violations of the Federal Securities Laws and Jury Demand ("Complaint") shall be "¶___" or "¶¶___."

Company fired the former WilTel employees most knowledgeable about the legacy systems and the Company was still using WilTel's network inventory control and provisioning systems even in late 2008. ¶¶130-144. Between July and October 2007, when defendants disclosed the truth about the integration failures of WilTel and the metro ring businesses, plaintiff and the Class lost billions of dollars. ¶¶21, 24.

Contrary to defendants' contentions, the Complaint sets forth with particularity the *who, what, when and where* regarding each of defendants' false statements. ¶¶88-89, 91-92, 94-97, 100-101, 104, 108-109, 112, 115, 116. The Complaint also explains in detail why each statement regarding the WilTel integration was false when made. ¶¶44-68, 99, 103, 111, 117. Nothing more is required and defendants' arguments concerning falsity should be rejected. *Schwartz v. Celestial Seasoning, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 19997).

Defendants' argument that their Class Period statements regarding WilTel were not material fails. This assertion ignores their own Class Period statements to the contrary, such as: "I do know this [integration] is an important matter to many of our investors," and integration work at Level 3 is "job #1." ¶¶89, 93, 97, 105. Here, the Complaint alleges that defendants made the following specific assurances to investors which were material and caused Level 3's stock price to be artificially inflated throughout the Class Period. "*We continue to run ahead of plan and have now completed the majority of integration efforts from WilTel, and we have completed these activities under budget*" (¶88); "*You are right on WilTel, we have [sic] generally done, substantially done, by that I mean 85%, 90% done with those efforts*" (¶97); and "*Most of the physical integration of WilTel is now complete*" (¶100). Between July and October 2007, when the market learned these statements were false, Level 3 lost billions of dollars in market capitalization. ¶¶21, 24, 114, 126,

168-169. This massive correction in Level 3's share price alone indicates that defendants' Class Period misleading statements were material. *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 269 (3d Cir. 2005).

The Complaint sets forth detailed allegations regarding how defendants knew their statements were false when made, *i.e.*, scienter. But defendants ignore the Complaint's detailed "True Facts" section which not only establish why defendants' statements were false, but why defendants knew they were false when made. ¶¶44-68. Defendants refuse to confront these allegations by arguing that plaintiff has not sufficiently identified sources. That is not the law. *See, e.g.*, *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1102 (10th Cir. 2003) (the PSLRA does not require plaintiffs to plead the sources of information when defendants can independently verify the allegations); *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1193 (10th Cir. 2003) (a pleading need not describe the contents of documents in defendants' possession). The Complaint is more than sufficient because it sets forth how the guidance and supervisory roles of the integrations were handled by an Integration Steering Committee ("Steering Committee"), which included defendant O'Hara and his direct report, Chief Information Officer Kevin Hart ("Hart"). ¶69. Hart reported the status of integration projects directly to defendant O'Hara and the Steering Committee reviewed and approved all integration-related projects. *Id.* The Steering Committee tracked and monitored the status of integration projects and objectives and reported this information directly to the Individual Defendants[2] *via* "Operational Overview Deck" reports and "Integration Status Reports" throughout

---

[2]     The term "Individual Defendants" refers to James Q. Crowe, Kevin J. O'Hara, Sunit S. Patel, Walter Scott, Jr. and Charles "Buddy" C. Miller III.

the Class Period.  ¶¶69-71, 145.  Thus, the Complaint sufficiently alleges defendants' actual knowledge regarding material deficiencies of the integration.

The Complaint's allegations of defendants' knowledge are corroborated by defendants' Class Period assurances to investors that they controlled the finest details of the integrations.  For instance, in July 2007, Crowe stated: "We are confident [in the status of the integrations] because all of the issues . . . are under our control.  All of us.  Sunit, Kevin, [and] myself . . . ."  ¶113.  Defendant Patel confirmed that the Individual Defendants kept themselves fully informed of integration processes: "When you do these many acquisitions in such a short period of time [it] makes me nervous also, so we spend a lot of time worrying a lot and monitoring things quite carefully."  ¶97.  *See also* ¶¶93, 109, 112, 147.

The Complaint's allegations regarding motive and opportunity also provide circumstantial evidence of defendants' scienter.  ¶¶151-163.  For instance, defendants utilized Level 3's inflated stock price to make the $1.4 billion acquisition of Broadwing, improve the Company's credit rating, and refinance billions of dollars in debt.  ¶¶151-153.  Whether defendants like it or not, these allegations are probative of scienter.  *See Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 2 F. Supp. 2d 1345, 1359-60 (D. Colo. 1998) (holding false statements designed to inflate the value of company's stock to execute acquisitions based on the artificially inflated prices are actionable).

The Complaint also sets forth the element of loss causation by explaining how defendants' false statements affected Level 3's stock price during the Class Period and how Level 3's stock price declined when the market became aware of the true facts regarding the failed integrations.  ¶¶90, 98, 102, 106, 110, 114, 126, 164-170.  Level 3 suffered enormous losses in market capitalization in July and October 2007 when the Company disclosed it was experiencing increased activation times and

was forced to revise downward revenue and earnings guidance for 4Q 07 and FY 08. ¶¶21, 24, 114, 118, 168-169. The Complaint clearly explains how plaintiff's loss was causally connected to the alleged misrepresentations. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005); *In re Williams Sec. Litig. – WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009).

Accordingly, the Court should deny defendants' motion to dismiss in its entirety.

## II.      STANDARD ON A MOTION TO DISMISS

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the complaint must be construed in the light most favorable to plaintiff and its allegations must be taken as true. *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). The United States Supreme Court has cautioned, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

## III.     DEFENDANTS' FALSE STATEMENTS ARE ACTIONABLE UNDER SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

The PSLRA requires a complaint to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1)(B); *see also City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1258 (10th Cir. 2001). A complaint meets the PSLRA pleading requirements if it sets forth, "'the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Celestial Seasonings*, 124 F.3d at 1252.[3] Explaining why defendants' statements were misleading

---

[3]      Unless otherwise noted, all internal citations are omitted.

"can be done most directly by pointing to inconsistent . . . statements or information . . . which were made by or available to the defendants." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994).[4]

### A.    The Complaint Pleads with Particularity that Defendants' Statements About the Integration Were False and Misleading When Made

Contrary to defendants' argument (Defendants' Combined Motion and Brief to Dismiss Plaintiff's Consolidated Complaint ("MTD") at 5-13), the True Facts in the Complaint directly contradict defendants' statements regarding the status of Level 3's integration of the acquired companies during the Class Period. ¶¶44-68. On October 17, 2006, O'Hara told investors during a conference call that Level 3 had "completed the majority of integration efforts from WilTel [ahead of schedule and] under budget." ¶88; *see also* ¶¶91-92. On December 4, 2006, Patel reiterated at the Bank of America Credit Conference that Level 3 was "85%, 90% done" with the WilTel integration. ¶97. On February 7, 2007, O'Hara reassured investors that: "Most of the physical integration of WilTel is now complete."  ¶100.

These statements, as well as defendants' other misrepresentations alleged in the Complaint, were materially false and misleading.[5] Defendants completely ignore plaintiff's allegations that the

---

[4]    The Complaint specifies which statements are alleged to be false and why, and thus defendants' argument that it is puzzle pleading should be disregarded. *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1242, 1261 (N.D. Okla. 2003) ("Because the Complaint provides notice to each Defendant regarding the statements and omissions that Plaintiffs allege are misleading and the reasons why those statements and omissions are misleading, the Court denies . . . Defendants' motion to dismiss based on the argument that the Complaint is a 'puzzle-style' pleading.").

[5]    Lead Plaintiff has standing to assert claims based on statements made throughout the Class Period, including those made after July 26, 2007. *In re Rhythms Sec. Litig.*, 300 F. Supp. 2d 1081, 1085-86 (D. Colo. 2004). Also, defendants are liable for analyst statements where it is clear the statements originated from defendants. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,

most critical part of the integration process – the middle-office integration, conservatively 33% of the integration process which included the network inventory control and provisioning systems – was not even started in 2008, let alone during the Class Period. ¶¶17-18, 47, 99(b). The integration process can be broken down into three phases, front, middle and back offices with each conservatively constituting 33% of the process. ¶¶17-18. Level 3 had not even completed certain portions of the first 33% (front) nor huge portions of the second 33% (middle). ¶¶47-51. Further, defendants' assertion that they were 85%-90% complete indicates that the Company was well into the final third of the WilTel integration, which was not even initiated until 2008. ¶¶17-18, 47, 99(b).

Defendants' statements that Level 3 had "already begun cross selling all products and capabilities to all of our targeted customers" obtained through the WilTel and metro acquisitions were also materially false and misleading. ¶100. The truth was Level 3 had not completed the middle-office integration to the point where Level 3 could offer customers all the products and services associated with the acquired businesses. ¶¶45-47, 57, 59-60, 103. Furthermore, beginning in January 2007 the Company was forced to suspend the sales of some products, causing it to lose sales opportunities with customers. ¶¶58-60, 103(d). Level 3 did not know what products were available on its network systems and was selling orders in excess of its network capacity from January 2007 through the end of the Class Period. ¶¶59-60, 103(b), 111(b). In March 2008, defendants conceded this fact by admitting that as early as January 2007, Level 3 was losing

380 F.3d 1226, 1234-35 (9th Cir. 2004). Here, the Complaint alleges certain analyst reports published during the Class Period incorporated false statements that clearly originated from defendants. ¶¶91, 94-95, 108.

customers due to the significant increase in service activation times.  ¶139. The increase in provisioning times, as well as Level 3's inability to sell all products to customers from the acquired companies, were direct consequences of the Company's failure to integrate WilTel.  ¶¶46-47, 50. Once defendants chose to speak about the status of the WilTel integration, they were obligated to disclose these material facts.  *Schaffer v. Evolving Sys., Inc.*, 29 F. Supp. 2d 1213, 1221 (D. Colo. 1998) (a duty to speak the full truth is triggered when a defendant chooses to discuss the topic); *see also Angres v. Smallworldwide PLC*, 94 F. Supp. 2d 1167, 1173-75 (D. Colo. 2000) (same).

Furthermore, by the start of the Class Period, Level 3 had already terminated the subject matter experts knowledgeable about the order provisioning systems of WilTel and the metro ring companies and had failed to train the remaining employees to provision customer orders using the acquired companies' systems.  ¶¶44-47, 99(a)-(b), (e).  After the Class Period, defendants admitted that the Company lost 40% of outstanding customer orders because it could not provision the orders sold due to the termination of subject matter experts.  ¶133.  Post-Class Period admissions by defendants are indicative of falsity during the Class Period.  *See Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 249 (post-class period information is relevant to whether class period statements were false or misleading) (citing *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001)).  In 2008, defendants admitted: (i) that service delivery and quality deteriorated significantly in the first half of 2007; (ii) Level 3 had to stop selling products because Level 3 did not even know what products were available at the acquired companies; and (iii) the Company was still using the acquired companies' legacy systems.  ¶¶134, 141-143.  Defendants cannot reconcile these stunning admissions with their inconsistent Class Period statements.  ¶¶130-144.

While defendants assert that they fully disclosed the WilTel integration was "ongoing" (MTD at 7-8, Declaration of Brian Hoffman in Support of Defendants' Combined Motion and Brief to Dismiss Plaintiff's Consolidated Complaint ("Hoffman Decl.") Exs. A, B, C, and H) the Complaint clearly alleges that such disclosures were themselves false and misleading. The October 24, 2006 and February 8, 2007 conference calls cited by defendants state that the metro ring integrations were ongoing, but also reiterated defendants' false statements that the WilTel integration was ahead of plan, under budget and substantially complete. *See W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, No. 05-cv-1265-WDM-MEH, 2008 U.S. Dist. LEXIS 90278, at *21 (D. Colo. Nov. 6, 2008) (rejecting similar argument that defendant had allegedly fully disclosed all facts regarding a contract amendment since plaintiff alleged the supposed disclosures were misleading and incomplete). Moreover, defendants' misleading interpretation of the facts should be rejected.[6]

Defendants are not insulated from liability based on their alleged risk disclosures or the statement that they were "going to make mistakes." MTD at 8-9. Defendants cannot use risk disclosures to warn of risks that have already occurred. *In re Nash Finch Co. Sec. Litig.*, 502 F. Supp. 2d 861, 873 (D. Minn. 2007) (a warning cannot be meaningful if defendants know the risks have already materialized); *see also Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) (The safe-harbor provides no protection to one who warns "'there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away.'"). Nor do risk disclosures insulate

---

[6]    *See* Plaintiff's Response to Defendants' Motion Requesting Judicial Notice wherein plaintiff objects to defendants' request for judicial notice of documents offered for the truth of the matter asserted, filed herewith.

defendants where they have actual knowledge their statements are false when made. *Id*. Even if the

risk disclosures were applicable in a case such as this, defendants' disclosures here are too vague to

be meaningful. *W. Palm Beach Firefighters' Pension Fund v. Startek Inc.*, No. 05-cv-01265-WDM-

MEH, 2008 U.S. Dist LEXIS 47748, at *49-*51 (D. Colo. Mar. 28, 2008).

### B.    Defendants' Statements Were Material

Defendants argue their false statements are not material (MTD at 6-7), yet ignore that

statements such as the integration is "now completed," "85%, 90% done" and "has been completed

ahead of schedule and under budget," (¶¶88, 92, 97) are material and actionable under §10(b).  *See*

*In re Honeywell Int'l Inc. Sec. Litig.*, 182 F. Supp. 2d 414, 417, 423 (D.N.J. 2002) (defendants'

statements that "the integration . . . was going very well" and "ahead of schedule" were actionable

under §10(b)); *Nash Finch*, 502 F. Supp. 2d at 867-68 (statements that integration is proceeding

""""according to plan"""" and "'on schedule'" were held to be actionable under §10(b)); *In re Aetna*

*Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 944-45 (E.D. Pa. 1999) (defendants' statement that integration

was "'successful'" was a material statement because it was "tied to the very issue about which

Plaintiffs complain").[7]

---

[7]    Defendants' reliance on *Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997), and *In re Razorfish, Inc. Sec. Litig.*, No. 00 CIV. 9474 (JSR), 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001), is misplaced.  Unlike the statements at issue in those cases, defendants' statements that the WilTel integration was 85% to 90% complete and Level 3 was cross selling all the acquired businesses' products are assertions of verifiable fact, not opinion. ¶¶97, 100.  *Grossman*, 120 F.3d at 1121 (defendants' statements were immaterial because they were incapable of objective verification); *see also In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1217 (D. Kan 2002) (where defendants' false statements are couched in terms of past or present facts they are far more "material than statements couched as optimistic predictions").  For the same reasons, the Court should reject defendants' reliance on *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) and *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1108 (10th Cir. 2009).  Further, materiality is generally not appropriate for determination at this stage in the proceedings.  *Pirraglia*, 339 F.3d at 1192 n.13.

Additionally, the materiality of information can be properly measured *post hoc* by looking to the movement of the price of the company's stock in the period immediately following the alleged disclosure. *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000). Here, Level 3's stock price dropped immediately after defendants' July 2007 disclosure of "increases in service activation times" for its product and services and again in October 2007 after defendants' disclosure Level 3 was lowering guidance for FY 2007 and 2008 due to difficulties "provisioning orders for its services." ¶¶168-170. Based on the foregoing, defendants' statements are not "as a matter of law" immaterial. *Grossman*, 120 F.3d at 1121.

Indeed, by their own Class Period admissions and conduct, defendants confirmed that the integrations were important to investors. The integrations were often the first thing defendants discussed in their conference calls with investors. Hoffman Decl., Exs. C, E, I. Crowe prefaced his comments about Level 3's integration plans by stating: "I'm going to add one more comment [about integration], because I do know this is an important matter to many of our investors." ¶89. Throughout the Class Period, defendants repeatedly emphasized the importance of the status of the integrations by stating they are "job #1" and so "carefully" monitored because the integrations were "top priority." ¶¶97, 105, 109. These allegations establish the materiality of defendants' Class Period statements. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 555 (6th Cir. 2001).[8]

---

[8]   Defendants Scott and Miller are liable under the group pleading doctrine for the false statement regarding the WilTel integration contained in Level 3's 3Q 06 SEC Form 10-Q. ¶¶39, 43, 96. Courts in the District of Colorado recognize the validity of group pleading doctrine after the passage of the PSLRA. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1145 (D. Colo. 2005) ("the group publication doctrine was not abrogated by the PSLRA," citing *Schaffer*, 29 F. Supp. 2d at 1225). Other courts are in accord. *See Williams*, 339 F. Supp. 2d at 1260; *see also In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 438-40 (S.D.N.Y. 2005) (finding the Fifth Circuit's reasoning in *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004)

## IV.    THE COMPLAINT ADEQUATELY PLEADS DEFENDANTS' SCIENTER

The PSLRA requires allegations of facts "giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. §78u-4(b)(2). The required state of mind is scienter – a mental state embracing the intent to deceive, manipulate or defraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Fleming*, 264 F.3d at 1258. In the Tenth Circuit, a showing of recklessness suffices. *See Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir. 1996). When evaluating scienter allegations, a court must: (1) accept all factual allegations in the complaint as true; (2) consider the allegations collectively; and (3) consider all allegations and entertain only those plausible opposing inferences that can be rationally drawn from the facts alleged. *Tellabs*, 551 U.S. at 322-24. Pursuant to these standards, the Complaint sufficiently alleges defendants' scienter.

### A.    The Complaint Sufficiently Alleges Defendants' Knowledge of the Undisclosed Facts as Well as Their Direct Access to Those Facts

The Complaint provides a litany of specific facts detailing various meetings, reports and reporting mechanisms showing the Individual Defendants' knowledge that their Class Period statements were false when made. ¶¶44-73. These allegations include:

- The Individual Defendants each received weekly updates called "Operational Overview Deck" reports, which reported provisioning delays and had access to

---

"unpersuasive" and holding the PSLRA did not impact the validity of the group pleading doctrine). Plaintiff has alleged a strong inference defendants Scott and Miller were aware of the falsity of Level 3's statements, and thus they are liable for false statements published by Level 3. *Qwest*, 387 F. Supp. 2d at 1145; ¶¶35-36, 39-43, 145, 151-153, 159, 161-162. Defendant Miller is also liable for the false statements regarding WilTel made during Level 3's October 17, 2006 conference call because he was present and failed to correct the false statements made by defendant O'Hara. *See N.J. v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1128 (D. Kan. 2004).

weekly "Integration Status Reports" that likewise tracked the status of the acquired companies' integration. (¶¶70, 145);

- O'Hara, was a member of the Steering Committee and he oversaw and had final approval authority over all integration projects and tasks (¶145); and reported the status of the integrations of WilTel, Broadwing and the other acquired companies to Level 3's senior management, including defendants Crowe, Miller and Scott (¶¶69, 145);

- The Individual Defendants were aware throughout the Class Period of the failed WilTel network inventory and provisioning systems integration which was not even started until the end of 2007 (¶¶47, 50, 69-74);

- In January 2007, O'Hara informed legacy Broadwing employees that Level 3's executive management knew that the failure to timely integrate network provisioning systems caused order processing intervals and customer complaints to increase (¶¶73, 111(c));

- Throughout the Class Period, O'Hara and Crowe received reports from Level 3's President of Wholesale Markets, Sureel Choksi, about order fulfillment delays, customer complaints and trouble tickets caused by the failed integration processes (¶¶71, 145); and

- Throughout the Class Period, O'Hara and Crowe met directly with high-revenue customers, including NuVox and XO Communications, in response to service quality complaints and order fulfillment delays caused by failed integration of network provisioning and inventory systems (¶¶72, 146).

Defendants do not dispute the veracity of these allegations, nor can they. Instead, defendants contend these facts should be disregarded because plaintiff does not identify the source. MTD at 11-12. But the contents and existence of "Operational Overview Deck" reports and weekly "Integration Status Reports" (¶¶69-70, 145) are not "secret" and can be independently verified by defendants. *See Adams*, 340 F.3d at 1102 (the sources for these types of allegations are not required to be alleged). Thus, these allegations comply with the PSLRA's pleading requirements. *See id. See also Pirraglia*, 339 F.3d at 1193 ("[t]his is asking too much of the plaintiffs" who at motion to dismiss stage are not required to detail documents and paperwork kept in defendants' own files).

- 13 -

Remarkably similar allegations survived a Rule 12(b)(6) motion in this District. *In re ICG Commc'ns. Sec. Litig.* involved investors' §10(b) claims based on defendants' failure to disclose "serious and continuing problems with ICG's communications network and customer service." No. 00-RB-1864 (BNB), 2006 U.S. Dist. LEXIS 6695, at *6, *18-*20 (D. Colo. Feb. 7, 2006). The *ICG* court found allegations that an executive defendant: (1) learned of the network problems and delays from the transcript of a day-long meeting with employees; and (2) flew to a customer's headquarters to "'patch up'" relations as result of network problems, sufficient to establish a strong inference of scienter. *Id.* at *35-*36. Here, plaintiff alleges the Individual Defendants had knowledge of the WilTel integration *via* company reports, meetings with Company employees and face-to-face meetings with dissatisfied customers. ¶¶69-72, 145-146.[9]

### B.    Defendants' Post-Class Period Admissions Further Support a Strong Inference of Scienter

Following the Class Period, defendants made numerous admissions which further support scienter. ¶¶131-144. One of the most telling admissions was made on July 24, 2008, when Crowe revealed that Level 3 continued to utilize the same provisioning processes and systems of all the acquired companies – *i.e.*, that these critical systems had never been integrated. ¶142. This admission stands in clear contrast to defendants' Class Period representations that the WilTel acquisition was virtually complete. ¶¶88, 92, 98, 100. As such, his admission is indicative, at

---

[9]    Defendants ignore the specific examples showing defendants' knowledge of widespread customer dissatisfaction with the significant delays in the fulfillment of their orders during the Class Period. Throughout 2007, three major Level 3 customers complained directly to O'Hara and Crowe about delays in the fulfillment of their orders. ¶¶111(b), 146. Also, the example of a Collier County School District order placed in August 2007 that was not fulfilled on time further demonstrates that Level 3's customers' "experience" was no longer "positive." ¶¶64, 104, 117(b).

minimum, of defendants' recklessness throughout the Class Period. *See, e.g.*, *Helwig*, 251 F.3d at 558 ("'A defendant who asserts a fact as of his own knowledge or so positively as to imply that he has knowledge, under the circumstances when he is aware that he will be so understood when he knows that he does not in fact know whether what he says is true, is found to have intent to deceive.'").

    **C.**    **The Complaint Contains Additional Allegations Further Supporting a Strong Inference of Scienter**

        **1.**    **Defendants Were Motivated to Artificially Inflate Level 3's Stock Price to Consummate the Broadwing Acquisition and Refinance the Company's Debt**

The Complaint contains specific allegations demonstrating defendants' motive to inflate Level 3's stock price to: (1) acquire Broadwing in a January 2007 cash-and-stock transaction for $1.4 billion; and (2) refinance $1.4 billion in debt – Level 3's largest credit facility at the time – on favorable terms. ¶¶151-153. Because these allegations of motive are specifically and uniquely related to Level 3, as well as defendants' alleged fraud, they support a finding of scienter. *See Fleming*, 264 F.3d at 1269. In *Coeur D'Alene Mines Corp.*, investors alleged defendants had the motive to execute several transactions utilizing an artificially inflated stock price. 2 F. Supp. 2d at 1359. Because "[n]one of these transactions would have been possible" but for the effect defendants' fraud had on the company's stock price, Judge Brimmer held these allegations supported a strong inference of scienter. *Id.* at 1359-60. *See also Croker v. Carrier Access Corp.*, No. 05-cv-01011-LTB-OES, 2006 U.S. Dist. LEXIS 48603, at *28 (D. Colo. July 18, 2006) (holding defendants' desire to consummate an acquisition through artificially inflated company stock supports a strong inference of scienter).

Defendants' argument that the Broadwing merger cannot demonstrate a motive to commit fraud since the merger price was set before the Class Period ignores that the merger required Broadwing shareholder approval during the Class Period. MTD at 16. Had the failure of the WilTel integration been disclosed on October 17, 2006 (as opposed to defendants touting it as complete), the price of the acquisition would have cost millions more Level 3 shares, and Broadwing shareholders undoubtedly would have considered a far lower Level 3 stock price critical in approving the merger. Equally unavailing is defendants' argument that their misrepresentations did nothing to improve the terms of Level 3's $1.4 billion refinancing. *Id.* The Complaint alleges the acquisitions created "the false perception" the Company would generate positive cash flow which enabled the Company to improve its credit rating and refinance its outstanding debt on more favorable terms. ¶22.

### 2. Defendants Held the Top Positions at Level 3 and Their Alleged Fraud Concerned Level 3's Core Operations

It is undisputed the Individual Defendants were the senior executives at Level 3 that controlled the Company. ¶¶32-36. Crowe, Patel, and O'Hara repeatedly held themselves out to investors as the persons most knowledgeable about the status of the integration of the acquired companies with statements like "all of the [integration] issues . . . are under our control"; "I do know this is an important matter to many of our investors . . . more than half of all acquisitions destroy value . . . . That is because, at least in our view, people . . . don't plan the integration properly . . ."; and "[w]hen you do these many acquisitions in such a short period of time . . . we spend a lot of time worrying a lot and monitoring things quite carefully." ¶¶89, 97, 113. *See also* ¶¶93, 109, 112, 147. Contrary to defendants' argument (MTD at 17), the Complaint does couple these statements with specific information known by the Individual Defendants about the fraud. ¶¶44-73. *See, e.g.*, *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1190-91 (C.D. Cal. 2008) (noting it would

- 16 -

be "'absurd'" to conclude defendants would not have known of such crucial business information under the circumstances); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008) ("Is it conceivable that he was unaware of the problems of his company's two major products and merely repeating lies fed to him by other executives of the company? It is conceivable, yes, but it is exceedingly unlikely."), *dismissed, in part*, 2008 U.S. Dist. LEXIS 41539 (N.D. Ill. 2008).[10]

### 3. Crowe, O'Hara, Patel, and Miller Were Motivated to Conceal the Truth Because Their Compensation Was Directly Tied to Level 3's Success in Integrating the Acquired Businesses

Between 2006 and 2007, while deceiving the public about the very performance measures used to determine their bonuses, Crowe, O'Hare, Patel, and Miller received more than $38 million in salary and incentive-based compensation. ¶¶154-155. According to Level 3's 2007 SEC filings, the executive bonus program explicitly referred to "[e]ffective[] manage[ment of] WilTel acquisition integration activities" as a performance measure. Hoffman Decl., Ex. M at 15; *see also* ¶155. In 2006, these defendants received nearly $10 million in cash bonuses for their purported expertise and ability to integrate WilTel and the acquired businesses on time and under budget. ¶155. Notably, defendants received no bonus in 2007 because the integration of WilTel and the other acquired businesses were failures. ¶156. These allegations are probative of defendants' motive to defraud for personal gain. *See, e.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, MDL No. 1783, 2007 U.S. Dist. LEXIS 93877, at *23-*26 (N.D. Ill. Dec. 18, 2007) (executive compensation relevant to scienter inquiry where defendant used compensation to "guild his reputation" as a "'superstar'" with

---

[10]     Defendants also contend that the execution of Sarbanes-Oxley certificates does not support an inference of scienter. MTD at 14 n.12. To the contrary, "Sarbanes-Oxley certifications [do] constitute one factor among many that courts may consider, in the totality of the circumstances, to evaluate [scienter]." *Croker*, 2006 U.S. Dist. LEXIS 48603, at *19.

analysts); *In re Guilford Mills, Inc. Sec. Litig.*, No. 98 Civ. 7739 (CLB), 1999 U.S. Dist. LEXIS 21690, at \*10-\*11 (S.D.N.Y. July 21, 1999) (holding that a CEO's compensation is relevant to the scienter inquiry where compensation was dependent upon the profitability of an acquired company).

    **4.**    **Defendants' Unlawful Class Period Insider Trading Supports a Strong Inference of Scienter**

Crowe, O'Hara, Patel and Miller's Class Period insider trading was suspicious in timing. *See The Sorkin, LLC v. Fischer Imaging Corp.*, No. 03-cv-00631-RPM, 2005 U.S. Dist. LEXIS 19934, at \*30 (D. Colo. June 21, 2005). First, they sold not a single share of stock in the 22 months prior to the Class Period. ¶162. Second, the fact that defendants sold no stock in 2006 refutes the assertion that Class Period trades were "automatic." MTD at 14.[11] Third, the final trades occurred on October 2, 2007, shortly before the two precipitous stock price declines on October 15 and 23, 2007. ¶161. Accordingly, these allegations support a strong inference of scienter.

**V.**    **THE COMPLAINT MEETS THE PLEADING REQUIREMENTS FOR LOSS CAUSATION**

To adequately plead loss causation, the Complaint need only provide defendants "with some indication of the loss and the causal connection that the Plaintiff has in mind."[12] *Dura Pharms*, 544 U.S. at 347. Loss causation can be established by pleading corrective disclosures. "To be

---

[11]    Nevertheless, defendants' purported fact-based arguments concerning unlawful insider trading are premature at this stage in the proceedings. *See Croker*, 2006 U.S. Dist. LEXIS 48603, at \*31.

[12]    Defendants contend loss causation is not well pled because risks that materialized were previously disclosed. *See* MTD at 20 n.17. This argument has been rejected in this district based upon a similar set of facts. *See Startek*, 2008 U.S. Dist. LEXIS 90278, at \*21 (loss causation is adequately alleged because defendants' previous disclosure regarding a new tiered-pricing contract did not disclose the true extent of known, adverse facts).

corrective, the disclosure need not precisely mirror the earlier misrepresentation," rather it need only relate back "to the alleged fraud." *Williams*, 558 F.3d at 1140. Contrary to defendants' assertions, the Complaint squarely meets these requirements.

On July 26, 2007, defendants partially revealed that Level 3's failure to integrate the acquired companies' provisioning systems led to "the average period of time it takes to convert certain new service orders into revenue [extending] by up to 50 to 75%," due to "continue[d] . . . use [of] multiple order entry and provisioning processes and systems that were operated by the acquired companies." ¶¶23, 112. This disclosure conflicts with defendants' fraudulent Class Period statements that the WilTel integration was complete. ¶¶88, 91-92, 94, 96, 100. Defendants' Class Period-ending disclosure on October 23, 2007 revealed Level 3's failure to timely provision orders during the Class Period – due in part to terminating legacy subject matter experts capable of consolidating the inventory control and provisioning systems of the acquired companies with Level 3's – caused a drop in revenue growth. ¶¶119-125. These statements similarly contradict defendants' Class Period statements.

Defendants post-Class Period statements that Level 3 was forced to downwardly revise its 2007 and 2008 financial guidance because of Level 3's failure to integrate the acquired businesses are also probative of loss causation. *In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 542-43 (N.D. Ill. 2007). *See, e.g.*, ¶131 (on November 16, 2007, defendants admitted that guidance reduced because installation capabilities were "constrained" by failure to complete integrations); *see also* ¶¶133-134. Thus, the Complaint adequately alleges loss causation.

## VI.    THE COMPLAINT ADEQUATELY ALLEGES CLAIMS FOR §20(a)

To plead a control person claim, plaintiff must, in addition to pleading a primary violation, allege defendant had "'possession, direct or indirect, of the power to direct or cause the direction of

the management and policies of a person.'"  *Maher v. Durango Metals*, 144 F.3d 1302, 1305 (10th Cir. 1998).  The Complaint sufficiently pleads violations of §10(b) and Rule 10b-5 and shows Individual Defendants participated in the planning, orchestration and day-to-day management of Level 3's acquisitions and integrations.  ¶¶32-36.[13]

## VII.   CONCLUSION

For the foregoing reasons, the Complaint alleges well-founded securities law claims against defendants.  Defendants' motion to dismiss should be rejected and the Complaint upheld.[14]

DATED:  August 28, 2009                     Respectfully submitted,

                                                          COUGHLIN STOIA GELLER
                                                            RUDMAN & ROBBINS LLP
                                                      HENRY ROSEN
                                                      TRIG R. SMITH
                                                      LAURIE L. LARGENT
                                                      JULIE A. KEARNS

                                                         _____
                                                         s/ HENRY ROSEN
                                                       HENRY ROSEN

                                               655 West Broadway, Suite 1900
                                               San Diego, CA  92101
                                               Telephone:  619/231-1058
                                               619/231-7423 (fax)

---

[13]    With regard to defendants Scott and Miller, the Complaint adequately pleads the circumstance of the control relationship with particularity.  ¶¶35-36; *Maher*, 144 F.3d at 1305.  *See also In re Storage Tech. Corp. Sec. Litig.*, 147 F.R.D. 232, 236 (D. Colo. 1993) ("Plaintiffs need not allege the specific instances of actual control exercised by the individual defendants.").

[14]    The allegations in the Complaint should be upheld.  If for any reason the Court finds plaintiff's allegations lacking, plaintiff respectfully requests leave to amend.  *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires.").

JOHNSON BOTTINI, LLP
FRANCIS A. BOTTINI, JR.
ALBERT Y. CHANG
655 West Broadway, Suite 1400
San Diego, CA  92101
Telephone:  619/230-0063
619/233-5535 (fax)

Co-Lead Counsel for Plaintiffs

DYER & BERENS LLP
ROBERT J. DYER
JEFFREY A. BERENS
682 Grant Street
Denver, CO  80203-3507
Telephone:  303/861-1764
303/395-0393 (fax)
bob@dyerberens.com
jeff@dyerberens.com

Liaison Counsel

S:\CasesSD\Level 3 09\BRF00061026.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 28, 2009.

s/ HENRY ROSEN
HENRY ROSEN

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: henryr@csgrr.com

# Mailing Information for a Case 1:09-cv-00200-PAB-CBS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Allen Berens**
  jeffreyberens@comcast.net,jeff@dyerberens.com

- **Francis A. Bottini , Jr**
  frankb@johnsonbottini.com,paralegal@johnsonbottini.com

- **Albert Y. Chang**
  albertc@johnsonbottini.com,paralegal@johnsonbottini.com

- **Robert J. Dyer , III**
  bob@dyerberens.com

- **Jordan D. Eth**
  jeth@mofo.com,bfaust@mofo.com,nurbina@mofo.com

- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com

- **David P. Hersh**
  dhersh@burgsimpson.com,dnordstrom@burgsimpson.com

- **Brian Neil Hoffman**
  bhoffman@mofo.com,bfaust@mofo.com

- **Seth Alan Katz**
  skatz@burgsimpson.com,bgeorge@burgsimpson.com

- **Steven M. Kaufmann**
  skaufmann@mofo.com,tsthilaire@mofo.com

- **Julie A. Kearns**
  jkearns@csgrr.com

- **Laurie L. Largent**
  llargent@csgrr.com

- **Lon Angelo Licata**
  lon.licata@level3.com,lonamy@comcast.net

- **Kristin A. Martinez**
  kristin@dyerberens.com

- **Henry Rosen**
  henryr@csgrr.com,dianah@csgrr.com,e_file_sd@csgrr.com

- **Kip Brian Shuman**
  kip@shumanlawfirm.com,rusty@shumanlawfirm.com,lisa@shumanlawfirm.com

- **Trig Randall Smith**
  trigs@csgrr.com,stremblay@csgrr.com,e_file_sd@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`