## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00200-PAB-CBS

*(Consolidated with Civil Action Nos. 09-cv-00215, 09-cv-00296, and 09-cv-00606)*

In re LEVEL 3 COMMUNICATIONS, INC. SECURITIES LITIGATION

---

## REPLY IN SUPPORT OF DEFENDANTS' COMBINED MOTION AND
## BRIEF TO DISMISS PLAINTIFF'S CONSOLIDATED COMPLAINT

---

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT .......................................................................................................... 1

I.     PLAINTIFF RELIES ON OUTDATED PLEADING STANDARDS .................. 1

II.    THE COMPLAINT IS AN IMPERMISSIBLE "PUZZLE PLEADING." ............ 2

III.   PLAINTIFF ALSO FAILS TO PLEAD WITH PARTICULARITY A
       MATERIAL MISREPRESENTATION OR OMISSION ..................................... 2

       A.     The Challenged Statements Are Immaterial ................................................ 2

       B.     Defendants Disclosed the Allegedly Omitted Facts .................................... 4

       C.     Plaintiff Does Not Plead the Falsity of Defendants' Statements .............. 5

              1.     Plaintiff's "true facts" do not contradict defendants'
                     statements ...................................................................................... 5

              2.     Plaintiff's alleged "true facts" are unsupported ........................... 7

              3.     The alleged "admissions" do not show falsity .............................. 8

IV.    PLAINTIFF ALSO FAILS TO PLEAD PARTICULARIZED FACTS
       CREATING A "STRONG INFERENCE" OF SCIENTER ................................ 9

       A.     Plaintiff Fails to Allege Actual Knowledge of Any Undisclosed
              Facts ....................................................................................................... 9

       B.     The Alleged Stock Sales Do Not Support Scienter ................................. 11

       C.     The Other Alleged "Motives" Do Not Support Scienter ......................... 12

              1.     Cash and equity compensation .................................................... 12

              2.     Desire to acquire other companies and refinance credit ............ 12

              3.     Defendants' executive positions ................................................. 13

       D.     The Alleged "Admissions" Do Not Support Scienter ............................. 14

V.     PLAINTIFF ALSO FAILS TO PLEAD LOSS CAUSATION .......................... 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Kinder-Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) ................................................................. 1, 2, 8, 13

*Angres v. Smallworldwide, Plc*,
   94 F. Supp. 2d 1167 (D. Colo. 2000) ............................................................... 7

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .................................................................................... 2

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 2

*Berliner v. Lotus Dev. Corp.*,
   783 F. Supp. 708 (D. Mass. 1992) ................................................................. 7

*City of Philadelphia v. Fleming Cos., Inc.*,
   264 F.3d 1245 (10th Cir. 2001) ............................................................ 1, 10, 12

*Conley v. Gibson*,
   355 U.S. 41 (1957) ......................................................................................... 2

*Croker v. Carrier Access Corp.*,
   No. 05-cv-01011-LTB-OES, 2006 U.S. Dist. LEXIS 48603
   (D. Colo. July 18, 2006) ........................................................................... 11, 13

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ..................................................................... 2, 5

*Harold Malin & Sandra Joan Malin Revocable Trust v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007) ........................................................... 11

*In re 2007 Novastar Fin. Inc. Sec. Litig.*,
   No. 08-2452, 2009 WL 2747281 (8th Cir. Sept. 1, 2009) ............................. 2

*In re Aetna, Inc. Sec. Litig.*,
   34 F. Supp. 2d 935 (E.D. Pa. 1999) .............................................................. 2

*In re Best Buy Co., Inc. Sec. Litig.*,
   No. 03-6193-ADM/AJB, 2005 U.S. Dist. LEXIS 6427 (D. Minn. Apr. 12, 2005) .................. 3

ii

*In re BISYS Sec. Litig.*,
   397 F. Supp. 2d 430 (S.D.N.Y. 2005) ................................................................... 12

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................................... 13, 14

*In re Downey Sec. Litig.*,
   No. CV 08-3261-JFW (RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .................. 2, 10

*In re FX Energy, Inc. Sec. Litig.*,
   No. 2:07-CV-874CW, 2009 WL 1812828 (D. Utah June 25, 2009) ................................ 5, 12

*In re GlenFed Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ................................................................................. 1

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ................................................................... 3

*In re IAC/InterActiveCorp Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007) .................................................................... 10

*In re ICG Communc'ns Sec. Litig.*,
   No. 00-CV-1864-REB-BNB, 2006 U.S. Dist. LEXIS 6695
   (D. Colo. Feb. 7, 2006) ............................................................................... 10, 11

*In re MCI WorldCom, Inc. Sec. Litig.*,
   191 F. Supp. 2d 778 (S.D. Miss. 2002) ................................................................... 3

*In re Motorola Sec. Litig.*,
   505 F. Supp. 2d 501 (N.D. Ill. 2007) ..................................................................... 15

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   387 F. Supp. 2d 1130 (D. Colo. 2005) ................................................................... 15

*In re Rhythms Sec. Litig.*,
   300 F. Supp. 2d 1081 (D. Colo. 2004) ..................................................................... 5

*In re Sprint Corp. Sec. Litig.*,
   232 F. Supp. 2d 1193 (D. Kan. 2002) ..................................................................... 3

*In re Sun Healthcare Group, Inc. Sec. Litig.*,
   181 F. Supp. 2d 1283 (D.N.M. 2002) ..................................................................... 6

*In re Williams Sec. Litig.*,
   339 F. Supp. 2d 1242 (N.D. Okla. 2003) ................................................................. 2

iii

*Kurtzman v. Compaq Computer Corp.*,
No. H-99-779, 2002 U.S. Dist. LEXIS 26569 (S.D. Tex. Mar. 30, 2002)................................ 3

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
513 F.3d 702 (7th Cir. 2008) ..................................................... 14

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000) ..................................................... 2

*Pirraglia v. Novell, Inc.*,
339 F.3d 1182 (10th Cir. 2003)............................................. 8, 10, 13

*Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*,
2 F. Supp. 2d 1345 (D. Colo. 1998) ............................................. 13

*Schaffer v. Evolving Sys., Inc.*,
29 F. Supp. 2d 1213 (D. Colo. 1998) ............................................. 7

*Schwartz v. Celestial Seasoning, Inc.*,
124 F.3d 1246 (10th Cir. 1997) ................................................. 1

*W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
No. 05-cv-01265-WDM-MEH, 2008 U.S. Dist. LEXIS 90278
(D. Colo. Nov. 6, 2008) ..................................................... 5, 15

## OTHER AUTHORITIES

15 U.S.C. § 78u-4 (Reform Act) .......................................... passim

Securities Exchange Act of 1934, Section 20(a)........................................ 15

Fed. R. Civ. P. 8 ..................................................... 2

D.C.COLO.LCivR 7.1.C ..................................................... 15

## INTRODUCTION

Plaintiff's Opposition to Defendants' Combined Motion to Dismiss Plaintiff's

Consolidated Complaint (cited as "R," docket 82) distorts Level 3's actual statements, the law,

and plaintiff's own Complaint.[1]  Plaintiff argues that defendants concealed the work to be done

on the WilTel integration, but defendants consistently disclosed that work on the integration was

ongoing and would continue beyond the Class Period.  Plaintiff argues that defendants acted with

scienter, but plaintiff relies on rejected presumptions of knowledge, automatic stock sales, and

generalized motives shared by all corporate executives.  And plaintiff fails to show that Level 3's

July and October 2007 stock price declines were caused by any revelation of a prior statement's

falsity.  The Complaint should be dismissed on multiple grounds.

## ARGUMENT

### I.    PLAINTIFF RELIES ON OUTDATED PLEADING STANDARDS.

Plaintiff downplays the "very stringent pleading standard" that he must satisfy to survive

a motion to dismiss.  *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1259 (10th Cir.

2001); (*see also* M at 4-5).  Plaintiff instead relies on a lower standard, partly based on the pre-

Reform Act case *Schwartz v. Celestial Seasoning, Inc.*, 124 F.3d 1246 (10th Cir. 1997).  (*See* R

at 2 and 6, also citing pre-Reform Act *In re GlenFed Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir.

1994).)  In fact, the Reform Act "strengthened what is required adequately to plead" both falsity

and scienter.  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

"Generalized or conclusory allegations" do not suffice; plaintiff must allege "specific facts that

support" his falsity allegations.  *Id.* at 1098.  Likewise, to find a strong inference of scienter, the

---

[1] Abbreviations are used as stated in Defendants' Combined Motion to Dismiss Plaintiff's
Consolidated Complaint ("Motion" or "M," docket 74).  All emphasis in quotations is added.

Court must reach "a conclusion logically *based upon particular facts* that would *convince* a reasonable person that the defendant *knew* a statement was false or misleading." *Id.* at 1105.

## II.    THE COMPLAINT IS AN IMPERMISSIBLE "PUZZLE PLEADING."

Plaintiff responds to the Motion's "puzzle pleading" argument by ignoring defendants' cases and citing to *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1242, 1261 (N.D. Okla. 2003). (*See* R at 6, n.4.)  *Williams* relied on the Rule 8 pleading standard in *Conley v. Gibson*, 355 U.S. 41 (1957).  *Conley*'s relaxed standard, however, no longer applies even to Rule 8, let alone to the far more rigorous Reform Act.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1944, 1949-50 (2009).  Indeed, plaintiff still nowhere identifies which statements – out of the hundreds of lines of quoted text – he claims are false or the specific reasons why those statements were false.  Numerous courts have rejected similar pleadings on this ground.  (*See* M at 5 (citing cases)); *In re 2007 Novastar Fin. Inc. Sec. Litig.*, No. 08-2452, 2009 WL 2747281, at *3-4 (8th Cir. Sept. 1, 2009); *In re Downey Sec. Litig.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670, at *3-4 (C.D. Cal. Aug. 21, 2009).

## III.    PLAINTIFF ALSO FAILS TO PLEAD WITH PARTICULARITY A MATERIAL MISREPRESENTATION OR OMISSION.

### A.    The Challenged Statements Are Immaterial.

The Motion demonstrated that the challenged statements are "immaterial statements of corporate optimism."  (M at 6, citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997).)  Plaintiff first responds by arguing that the Court should not determine materiality on a motion to dismiss.  (*See* R at 10, n.7.)  Securities complaints, however, are routinely dismissed based on the immateriality of the challenged statements.  *See Grossman*, 120 F.3d at 1121; *Oran v. Stafford*, 226 F.3d 275, 282-83 (3d Cir. 2000); *In re Aetna, Inc. Sec. Litig.*, 34 F. Supp. 2d 935,

2

dn-155134

947 (E.D. Pa. 1999); *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1215-16, 1220 (D. Kan. 2002).

Second, plaintiff argues that Level 3's integration of the acquired companies was material.  (*See* R at 10.)  Plaintiff misses the point:  Defendants argued that the *challenged statements* were immaterial.  (*See* M at 6-7.)  Numerous courts have dismissed claims challenging virtually identical statements.  (*See* M at 7 (citing cases)); *In re MCI WorldCom, Inc. Sec. Litig.*, 191 F. Supp. 2d 778, 786 (S.D. Miss. 2002); *Kurtzman v. Compaq Computer Corp.,* No. H-99-779, 2002 U.S. Dist. LEXIS 26569, at *55-64 (S.D. Tex. Mar. 30, 2002).

Plaintiff additionally claims that the challenged statements are objectively verifiable.  (*See* R at 10, n.7.)  In contrast to his cited cases (*see* R at 10), however, plaintiff does not allege that the challenged statements refer to, explain, or conceal any specific objective information.  Indeed, plaintiff never argues that the challenged statements undermined the accuracy or reasonableness of Level 3's reported or forecasted financial results.  Plaintiff's failure to challenge Level 3's results or forecasts further confirms the immateriality of the challenged statements, a point that plaintiff does not contest.  (*See* M at 7); *In re Best Buy Co., Inc. Sec. Litig.*, No. 03-6193-ADM/AJB, 2005 U.S. Dist. LEXIS 6427, at *31 (D. Minn. Apr. 12, 2005).

Finally, plaintiff argues that Level 3's stock price movements in July and October 2007 demonstrate the materiality of prior statements.  (*See* R at 11.)  Plaintiff fails to show that these stock price changes related to the supposed falsity of earlier statements about integration, rather than to other matters disclosed at the same time, such as reduced projections for 4Q07 and 2008 results.  (*See* M at 19-20; *infra.*, § V); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1161 (C.D. Cal. 2007).

dn-155134

**B.    Defendants Disclosed the Allegedly Omitted Facts.**

According to plaintiff, defendants hid that Level 3 had not "completed" integrating WilTel's "inventory control and provisioning systems" during the Class Period.[2] (R at 1, 6-7.) Contrary to plaintiff's claims, defendants neither said that the entire WilTel integration was "complete" nor concealed the work that remained to be done. (R at 1.) Rather, defendants consistently disclosed that "ongoing IT system development work" for WilTel – which includes the systems on which plaintiff focuses – "will continue *through 2008*." (Ex. B at 5; Ex. C at 6.)

| Date | Level 3's Disclosures Regarding Work to Be Done on WilTel Integration |
| --- | --- |
| **October 17, 2006** | "[K]eep in mind *we have integration costs incurring in '07 and '08*." (Ex. I at 7.) |
| **October 24, 2006** | "[C]ollapsing all back office systems on to a single set of desired end state systems *will take some time*…all completed acquisitions are expected to migrate onto these same back office systems *over time*." (Ex. A at 5.) |
| **December 4, 2006** | "[W]e still have to get back-office integrations done like the link systems…[a] lot of the IT and the operating support systems, provisioning systems, order entry systems, *all of that is in progress right now*." (CC ¶ 97.) |
| **February 8, 2007** | "The remaining activities for WilTel are primarily tied to *ongoing IT system development work*." (Ex. B at 5.) There "will be some integration-related expense in '08. *There is a long tail on some of that system work* and the like." (*Id.* at 10.) |
| **April 26, 2007** | While "redesigning our operating support systems…we are often working in a hybrid systems environment that has elements of both the legacy Level 3 systems, and various systems of the 7 acquisitions." (Ex. C at 6.) This "will continue in varying degrees until the development of the end state systems are completed…. [N]ew systems releases [come] each month during 2007, but *this work will continue through 2008*." (*Id.*) This "is complicated and requires a lot of heavy lifting…. *In the IT area in particular, much of that lifting is still ahead of us*." (*Id.* at 7.) |
| **July 26, 2007** | "From the beginning, we have said that we would be substantially complete with integration in 2007, but the *systems work would continue through 2008.* We remain on track with both of those objectives." (Ex. E at 3; *see also id.* at 8; CC ¶ 112.) |

[2] Plaintiff does not question that defendants fully and accurately disclosed that Level 3's metro acquisition integration efforts would continue throughout 2007 and into 2008. (*See* M at 8; *but see* R at 6.) Plaintiff argues that defendants implied that Level 3 would integrate Broadwing "immediately" in January 2007. (R at 1.) In fact, in October 2006, defendants said "we expect [Broadwing] integration efforts to extend *into 2008*." (Ex. H at 1.)

4

| | |
|---|---|
| **July 26, (cont'd)** | "*[W]ork will continue through 2008*" on the "hybrid environment"; "this is the most complex part of the integration."  (Ex. E at 3; CC ¶ 112.) |

Plaintiff argues that the Court should ignore Level 3's actual statements because parts of them allegedly were false.  (*See* R at 9.)  If this were the rule, a plaintiff could avoid dismissal by cherry picking out-of-context snippets from company disclosures.  Instead, courts consider the full context of challenged statements, including text not cited in the complaint.  *See Grossman*, 120 F.3d at 1121; *In re FX Energy, Inc. Sec. Litig.*, No. 2:07-CV-874CW, 2009 WL 1812828, at *7-8 (D. Utah June 25, 2009); *W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, No. 05-cv-01265-WDM-MEH, 2008 U.S. Dist. LEXIS 90278, at *10-11 (D. Colo. Nov. 6, 2008).

Plaintiff also argues that the Court should ignore Level 3's cautions about the "challenges of successfully integrating acquired companies" because they do not protect Level 3's forward-looking statements from liability.  (M at 8; *see also* R at 9.)  Plaintiff again misses the point: These cautions further demonstrate that defendants disclosed that much work remained to be done and that Level 3's "financial condition and growth depends upon the successful integration of the acquired businesses."  (M at 8.)

### C.    Plaintiff Does Not Plead the Falsity of Defendants' Statements.

**1.**    *Plaintiff's "true facts" do not contradict defendants' statements.*

Plaintiff largely ignores the Motion's multiple arguments on this point.[3]  (*See* M at 9-11.)

---

[3] Plaintiff also does not contest that statements made before the Class Period are not actionable. (*See* R at 6, n.5; M at 6, n.5.)  In addition, Lead Plaintiff Poppo cannot challenge statements occurring after his last stock purchase.  (*See id.*)  Plaintiff relies on *In re Rhythms Sec. Litig.*, but that court recognized that a lead plaintiff must individually state a claim.  *See* 300 F. Supp. 2d 1081, 1085 (D. Colo. 2004).  If Mr. Poppo cannot show actionable misstatements that induced his purchases, then he has no claim and cannot represent anyone.  Further, plaintiff incorrectly claims that four analyst statements are actionable.  (*See* R at 6-7, n.5, citing CC ¶¶ 91, 94-95, 108.)  Plaintiff neither claims that the analysts quoted defendants nor alleges facts showing that

5

Plaintiff instead argues that his alleged "true facts" "directly contradict" five of defendants' statements.  (R at 6.)  Plaintiff is wrong.

First, plaintiff claims that Level 3 falsely said that it was "generally done, substantially done, by that I mean 85%, 90% done with" integrating WilTel's "physical network interconnections" and "data center[s]," "ahead of schedule and under budget."  (CC ¶¶ 92, 97; *see also id.* ¶¶ 88, 100.)  Plaintiff points to eight paragraphs in the Complaint to argue that the true undisclosed fact was that "the middle-office integration, conservatively 33% of the integration process" had "massive and undisclosed failures" and was "not even initiated until 2008."  (R at 7, citing CC ¶¶ 17, 18; *see also* CC ¶¶ 47-51, 99(c).)

Contrary to hiding that certain work would not happen "until 2008" (CC ¶ 48; *see also id.* ¶¶ 47, 49), Level 3 consistently disclosed that integrating WilTel's operating support and IT systems would "continue through 2008."  (*Supra*, § III(B).)  Plaintiff claims that Level 3 "took twice as long to provision customer orders" and customer waiting times at a single call center increased.  (CC ¶ 50; *see also id.* ¶¶ 51, 99(c).)  These two isolated allegations hardly demonstrate the "massive…failures" that plaintiff alleges.  Plaintiff's claim about "33% of the integration process" is manufactured out of whole cloth:  Not even the unsupported Complaint mentions this figure, and plaintiff provides no justification for dividing the integration into three steps, much less to ascribe 33% to each.  (*See* CC ¶¶ 17-18; R at 1.)  In fact, defendants consistently disclosed that the integration involved numerous elements, ranging from network interconnections to consolidations of data centers – not three equal parts – each progressing on different schedules.  (*See* CC ¶¶ 92, 97; *supra*, § III(B); M at 8); *see also Berliner v. Lotus Dev.*

_____

defendants were "sufficiently entangled with the report[s]" to have "placed their imprimatur" on them.  *In re Sun Healthcare Group, Inc. Sec. Litig.*, 181 F. Supp. 2d 1283, 1292 (D.N.M. 2002).

dn-155134

*Corp.*, 783 F. Supp. 708, 711 (D. Mass. 1992).

Second, defendants' February 2007 statement that Level 3 "had already *begun cross selling* all products and capabilities to all of our targeted customers" (CC ¶ 100) is not "directly contradict[ed]" by the alleged provisioning delays, staffing terminations, and continuing integration efforts. (*See* R at 7-8). None of plaintiff's allegations says anything about Level 3's "cross-selling." Plaintiff further challenges this statement by arguing that, "beginning in January 2007," Level 3 "suspend[ed] the sales of some products." (R at 7.) Plaintiff again misstates his Complaint, which alleges that *provisioning delays* occurred by January 2007 (CC ¶¶ 50, 58-60), but that *sales were not constrained until July 2007* (CC ¶ 56). The Complaint does not allege any facts that "directly contradict" the challenged February 2007 statement.

Plaintiff relies on two cases to argue that defendants' statements about integrating WilTel "obligated [them] to disclose" plaintiff's alleged provisioning delays, staffing terminations, and continuing integration efforts. (R at 8.) Unlike here, however, the *Schaffer v. Evolving Sys., Inc.* court found a duty to disclose negative financial results because the company released "only favorable gross revenue and net income figures." 29 F. Supp. 2d 1213, 1217 (D. Colo. 1998); (*see also* M at 9, n.6). And *Angres v. Smallworldwide, Plc.* did not discuss a duty to disclose; the court found that allegations showing software was not ready for shipment pled the falsity of statements saying it was. *See* 94 F. Supp. 2d 1167, 1173 (D. Colo. 2000).[4]

**2.**    *Plaintiff's alleged "true facts" are unsupported.*

In response to the Motion's points about the Complaint's unsupported allegations (*see* M

_____

[4] Plaintiff also claims that Level 3 terminated "subject matter experts knowledgeable" in certain areas. (R at 8.) Plaintiff does not claim that this "directly contradict[s]" any statements and does not argue that defendants had a duty to disclose staffing decisions. (*See id.*)

at 11-12), plaintiff claims that he need not identify his sources.  (*See* R at 3, 13.)  Yet identifying

sources "and the reliability of the sources" are two key factors in the Tenth Circuit's six-factor

test – a test that plaintiff ignores – to gauge compliance with the Reform Act's requirements for

pleading falsity.  *Adams*, 340 F.3d at 1099; (*see also* M at 10, n.7).  Complaints without

identified sources must provide "*particularly* detailed, numerous, plausible, or objectively

verifiable" factual allegations.  *Adams*, 340 F.3d at 1103; *see also Pirraglia v. Novell, Inc.*, 339

F.3d 1182, 1190 (10th Cir. 2003).  For example, the *Adams* plaintiff alleged a "detailed

explanation" of falsity, "significant details" about company documents, and "particularized

facts" about a defendant's statements to an identified source that directly contradicted the public

statements.  340 F. 3d at 1088, 1103-05.  The *Pirraglia* plaintiff *attached declarations* from

named sources "detailing specific instances" and alleged with "particularity" the contents of

company documents and an instance when a defendant instructed an employee to create fictitious

paperwork to recognize false revenues.  339 F.3d at 1190, 1193.

    In contrast to *Adams* and *Pirraglia*, plaintiff does not identify any witnesses – reliable or

otherwise – and provides only barren allegations about documents and discussions.  Plaintiff fails

to identify any specific adverse information that a particular defendant allegedly knew when

making a challenged statement.  The Complaint's litany of alleged problems and generalizations

do not come close to satisfying the Reform Act's requirements.  (*See* M at 11-12, 17.)

### 3.    *The alleged "admissions" do not show falsity.*

    Plaintiff argues that defendants "admitted" the falsity of their Class Period statements.  (R

at 8.)  They did not.  Defendants' post-Class Period discussions about "service delivery and

quality" deteriorations and continued use of legacy systems (R at 8) are consistent with

dn-155134

defendants' prior disclosures that its "hybrid systems environment" "will continue through 2008" and could cause "disruption[s] of ongoing business." (*Supra*, § III(B); Ex. D at 39.) In any event, none of the alleged "admissions" show that defendants' prior statements were false when they were made. Plaintiff alleges rejected "fraud by hindsight." (M at 12-13.)[5]

### IV.    PLAINTIFF ALSO FAILS TO PLEAD PARTICULARIZED FACTS CREATING A "STRONG INFERENCE" OF SCIENTER.

#### A.    Plaintiff Fails to Allege Actual Knowledge of Any Undisclosed Facts.

Plaintiff ignores the Motion (*see* M at 17) and argues that "detailed allegations" show defendants' "knowledge that their Class Period statements were false when made." (R at 12; *see also id.* at 3, 13.) This is not so. Plaintiff claims to provide "a litany of specific facts detailing various meetings, reports, and reporting mechanisms." (R at 12.) In fact, plaintiff fails to "detail with particularity the content" of any report or meeting. (M at 17 (citation omitted).) For example, plaintiff argues that defendants became aware of "status and schedule[s]," "trouble tickets," "provisioning delays," and "service quality problems" from "Integration Status Reports," a "Dashboard," "Operational Overview Decks," "Integration Steering Committee meetings," and reports by Sureel Choksi. (R at 12-13, citing CC ¶¶ 69-71, 145.) Plaintiff does not allege what any particular defendant actually learned from a specific report or meeting, such as what the "trouble tickets" said (or how many there were), the extent of the "provisioning delays" or "service quality problems," or what deadlines the "schedule" set. Plaintiff's "negative characterizations" of documents and meetings are insufficient to allege scienter. (M at 17

---

[5] Plaintiff also argues that a post-Class Period statement allegedly admitting that Level 3 lost customers due to increased "service activation times," "conceded" that Level 3 "did not know what products were available on its network systems and was selling orders in excess of network capacity." (R at 7-8.) Plaintiff's unsupported speculation does not allege falsity. (*See* M at 11.)

(citation omitted)); *see also In re Downey Sec. Litig.*, 2009 WL 2767670 at *12.[6]

Buried in a list and a footnote, plaintiff provides his only specifics. (*See* R at 13, 14, n.9.) Yet the two "specific examples," in addition to being unsupported, demonstrate the Complaint's failures. Plaintiff points to a January 2007 meeting with Broadwing employees in which Mr. O'Hara allegedly said that "executive management recognized and was aware of…increased order processing intervals." (CC ¶ 73.) General comments about increases of some unknown magnitude, however, do not support plaintiff's claim of "material deficiencies of the integration." (R at 4.)

In his only other "specific example," plaintiff argues that defendants knew about complaints from "three major Level 3 customers" and the Collier County School District, which had a lone $20,000 order. (R at 14, n.9.) All businesses get complaints, and the handful of complaints plaintiff cites, from among Level 3's thousands of customers is a far cry from plaintiff's claim of "widespread customer dissatisfaction." (*Id.*) Plaintiff's "specific examples" are "consistent with unremarkable circumstances," not fraud. *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 593 (S.D.N.Y. 2007); (*see also* M at 10).

Plaintiff claims that "[r]emarkably similar allegations" survived a motion to dismiss in *In re ICG Communc'ns Sec. Litig.* (R at 14.) Plaintiffs there alleged scienter where one defendant received a transcript of a full-day meeting of employees discussing "pervasive problems with ICG's network, and pervasive customer dissatisfaction"; learned about an "onslaught of

---

[6] Plaintiff also fails to show that the documents and meetings conveyed information that was "so obvious that the defendant[s] must have been aware" of its potential impact and that failure to disclose it would mislead. *City of Philadelphia*, 264 F.3d at 1265; (*see also* M at 9-10, 17). Plaintiff "may not circumvent" his pleading burdens "by asking the court to infer the existence of facts necessary to support a particular allegation." *Pirraglia*, 339 F.3d at 1188.

dn-155134

complaints" and that customers had cancelled "hundreds of thousands of lines"; "ordered that the cancelled lines not be booked until a later date"; knew about "large credits" issued to customers; and ordered that network switches be used, despite being told that they did not work and could not be fixed. No. 00-CV-1864-REB-BNB, 2006 U.S. Dist. LEXIS 6695, at *18-20, *35-36 (D. Colo. Feb. 7, 2006). The allegations showed that the defendant "knew of these problems" *and* did not believe that "they could be fixed in a reasonable time." *Id.* at *33. Far from being "remarkably similar," the Complaint here lacks these details. (*See supra*, § III.)

### B.    The Alleged Stock Sales Do Not Support Scienter.

Plaintiff does not claim that the amounts of stock that defendants Crowe, O'Hara, Patel, and Miller sold were suspicious. (*See* M at 15; Hoffman Decl. ¶¶ 18, 27.) Rather, plaintiff argues that the October 2 sales occurred "shortly" before declines in Level 3's stock price. (R at 18.) The bulk of Class Period sales, however, occurred months before, in May and July. (*See* CC ¶ 161.) Plaintiff does not question the timing of these earlier sales.

Plaintiff also does not allege facts questioning that the Class Period sales occurred automatically on defendants' behalf to pay withholding taxes. (*See* M at 14.) Rather, plaintiff asks that the Court ignore public filings showing this. (*See* R at 18, n.11; Exs. K-L; Hoffman Decl. ¶¶ 17-27; M at 14-15.) Such filings "are routinely accepted by courts on motions to dismiss securities fraud complaints and are considered for the truth of their contents." *Harold Malin & Sandra Joan Malin Revocable Trust v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 133 (D. Conn. 2007). Plaintiff relies on *Croker v. Carrier Access Corp.*, but that case involved a factual dispute over whether defendant controlled the entity that sold his stock under an automatic sales plan. *See* No. 05-cv-01011-LTB-OES, 2006 U.S. Dist. LEXIS 48603, at *31 (D. Colo. July 18,

dn-155134

2006).  The Complaint here raises no such dispute.  Nor does plaintiff explain how a lack of

2006 sales is relevant to the automatic nature of the Class Period sales.  (*See* R at 18.)

### C.     The Other Alleged "Motives" Do Not Support Scienter.

#### 1.     *Cash and equity compensation.*

Plaintiff does not dispute that defendants Crowe's, O'Hara's, Patel's, and Miller's equity

compensation fails to support an inference of scienter.  (*See* M at 15-16.)  Rather, plaintiff argues

that the bonuses' "performance measure[s]" were tied solely to Level 3's integrations.  (R at 17.)

Even if true, the bonuses do not create a motive to lie, as opposed to an incentive to successfully

manage the integrations.  In any event, the Court should reject plaintiff's misleading

characterization of Level 3's proxy statements about the bonuses.  *See In re FX Energy*, 2009

WL 1812828, at *7-8.  The proxies show that numerous factors concerning Level 3's overall

financial health informed decisions about the bonuses.  (*See* Ex. M at 15; Ex. N at 21.)  Plaintiff

also does not contest that criteria established before the Class Period informed decisions about

the FY06 bonuses.  (*See* M at 16, n.15.)  The bonuses thus provided generalized motives

"possessed by most corporate directors and officers" and do not support an inference of scienter.

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 444 (S.D.N.Y. 2005); (*see also* M at 15-16 (citing

cases)).  Plaintiff's cited cases differ because they involved compensation tied directly to the

allegedly fraudulently-stated issues (stock prices and merger terms).  (*See* R at 17-18.)

#### 2.     *Desire to acquire other companies and refinance credit.*

Plaintiff claims that the Court may infer scienter from Level 3's Broadwing acquisition

and credit refinancing.  (*See* R at 15-16.)  The Tenth Circuit and numerous other courts have

refused to infer scienter from similar transactions.  *See City of Philadelphia*, 264 F.3d at 1269;

dn-155134

*Adams*, 340 F.3d at 1104-05; (M at 16-17 (citing cases)).  Plaintiff ignores these cases and relies on *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 2 F. Supp. 2d 1345, 1359 (D. Colo. 1998).  Unlike here, however, those plaintiffs provided "particularized allegations" that "describe in detail circumstances that strongly suggest [that] these statements were purposefully made misrepresentations…designed…[to] permit" the defendant to complete the transactions.  *Id*.[7]

Plaintiff engages in wild speculation to argue that Broadwing's shareholders would not have approved the Level 3 merger absent allegedly false statements about integrating WilTel.[8] (*See* R at 16.)  Plaintiff also does not provide particularized support for his conjecture that defendants' statements created a "false perception" of cash flow for the credit refinancing.  (*Id.*) Plaintiff's unsupported hypothesizing does not support an inference of scienter, much less a strong inference.  *See Pirraglia*, 339 F.3d at 1188.

### 3.    *Defendants' executive positions.*

The Motion demonstrated that plaintiff failed to allege scienter based on defendants' positions and supposed direct monitoring of integration activities.  (*See* M at 17.)  Plaintiff ignores this and argues that defendants "held themselves out to investors as the persons most knowledgeable about the status of the integration."  (R at 16.)  Defendants' statements, at most, show only that they were involved with "the integration" as a whole.  (*See* CC ¶¶ 89, 93, 97, 109, 112-13, 147.)  Plaintiff's reliance on *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) again demonstrates the Complaint's failures.  Unlike here, the

---

[7] Plaintiff additionally relies on *Croker*, which is inapplicable because it did not involve an acquisition, credit refinancing, or similar transaction.  *See* 2006 U.S. Dist. LEXIS 48603 at *28.
[8] Plaintiff also departs from his original insufficient allegations.  (*See* M at 16.)  The Complaint alleges that defendants were motivated to "make numerous corporate acquisitions," not just Broadwing.  (CC ¶ 22.)  And it alleges that defendants sought "more favorable terms" for the Broadwing acquisition, not to secure shareholder approval.  (CC ¶ 151.)

*Countrywide* plaintiffs supported their claims about the CEO's "self-proclaimed 'hands on approach'" with "confidential witnesses who could allege first-hand knowledge of the CEO and CFO's practices" and facts showing that executives were "regularly provided detailed exception statistics" that revealed the alleged fraud. *Id.* at 1190-91, 1193. Plaintiff also relies on *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 711 (7th Cir. 2008), but that case did not involve statements from a defendant akin to plaintiff's allegations here.

### D.     The Alleged "Admissions" Do Not Support Scienter.

Plaintiff ignores that defendants' alleged post-Class Period "admissions" actually show that defendants did *not* know the "truth" all along. (*See* M at 18.) Instead, plaintiff claims that a July 2008 statement by Mr. Crowe (CC ¶ 142) "is indicative" of scienter for prior statements about WilTel. (R at 14.) This alleged "admission" says nothing about WilTel, only that Level 3 continued to use "processes and systems" from "acquired companies." (CC ¶ 142.) Nor does this alleged "admission" say anything about defendants' Class Period knowledge. Mr. Crowe's statement is consistent with Class Period disclosures that integration work "will continue through 2008." (*Supra*, § III(B).) Plaintiff fails to allege the sort of "I knew it all along" statement that courts require for an "admission" to show scienter for prior statements. (*See* M at 18.)[9]

### V.     PLAINTIFF ALSO FAILS TO PLEAD LOSS CAUSATION.

Plaintiff no longer alleges loss causation based on the October 15 release. (*See* R at 19.) And neither the July 26 release nor the October 23 release revealed the falsity of any prior statements. (*See id.*; M at 19-20.) Indeed, plaintiff fails to identify a single Class Period statement allegedly contradicted by the October 23 release. (*See* R at 19.) Rather, both the July

---

[9] Plaintiff's Sixth Circuit case did not involve post-class period admissions. (*See* R at 15.)

dn-155134

and October releases, which disclosed Level 3's continuing integration efforts, are consistent with prior statements that this work was ongoing.  (*See supra,* § III(B).)  Both releases also disclosed matters relating to Level 3's financial results and forecasts, neither of which plaintiff challenges.  (*See* M at 3-4, 19.)  Plaintiff fails to show that the July or October stock price drops related to the challenged statements about integration, rather than to these disclosures about financial results and forecasts.

Plaintiff's loss causation arguments are not bolstered by defendants' post-Class Period statements.  Those statements provided after-the-fact analyses of Level 3's integration efforts, not discussions of a causal connection between the alleged misrepresentations and stock price drops.  (*See* CC ¶¶ 131, 133-34.)  Plaintiff cites to *In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 542-43 (N.D. Ill. 2007), but that case did not involve post-class period statements.[10]

## CONCLUSION

For the reasons stated in the Motion and this reply,[11] defendants respectfully request that this Court dismiss the Complaint without leave to amend.  (*See* M at 20.)  Plaintiff's request for leave to amend in his opposition brief is inappropriate under Local Rule 7.1.C.

---

[10] Plaintiff argues that *Startek*, 2008 U.S. Dist. LEXIS 90278, *20 rejected defendants' argument that "loss causation is not well pled because risks that materialized were previously disclosed." (R at 18, n.12; *see also* M at 20, n.17.)  In fact, that court found the plaintiff failed to plead loss causation on one claim for this reason.  *See Startek*, 2008 U.S. Dist. LEXIS 90278 at *20

[11] Plaintiff fails to state a claim against defendants Scott and Miller for two additional reasons. First, they are not responsible under the group pleading doctrine for statements in Level 3's 3Q06 Form 10-Q or October 17, 2006 call because plaintiff does not show that these defendants became "aware of the [alleged] falsity of the statement[s]."  *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1145 (D. Colo. 2005); (*see also* R at 11-12, n.8; M at 13, n.9). Second, plaintiff's Section 20(a) claim against these defendants fails because plaintiff relies on two paragraphs that do not provide the required particularity.  (*See* M at 20, n.18; R at 20, n.13.)

Dated: September 21, 2009

Respectfully Submitted,


<u>s/ Jordan Eth</u>
Jordan Eth
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522
Email: JEth@mofo.com

Steven M. Kaufmann
Brian Neil Hoffman
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
Telephone:  303.592.1500
Facsimile:  303.592.1510
Email: SKaufmann@mofo.com
          BHoffman@mofo.com

*Attorneys for defendants*

16

dn-155134

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Kip Brian Shuman | kip@shumanlawfirm.com |
| Rusty Evan Glenn | rusty@shumanlawfirm.com |
| Jeffrey Allen Berens | jeff@dyerberens.com |
| Robert J. Dyer, III | bob@dyerberens.com |
| Lon Angelo Licata | Lon.licata@level3.com |
| Seth A. Katz | skatz@burgsimpson.com |
| David P. Hersh | dhersh@burgsimpson.com |
| Trig Randall Smith | trigs@csgrr.com |
| Julie A. Kearns | jkearns@csgrr.com |
| Kristin A. Martinez | kristin@dyerberens.com |
| Laurie L. Largent | llargent@csgrr.com |
| Henry Rosen | henryr@csgrr.com |
| Albert Y. Chang | albertc@johnsonbottini.com |
| Francis A. Bottini, Jr. | frankb@johnsonbottini.com |

s/ Jordan Eth
Jordan Eth
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522
Email: JEth@mofo.com

Steven M. Kaufmann
Brian Neil Hoffman
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, CO  80202-5638
Telephone:  303.592.1500
Facsimile:  303.592.1510
Email: SKaufmann@mofo.com
          BHoffman@mofo.com

*Attorneys for defendants*