**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-00200-PAB-CBS

*(Consolidated with Civil Action Nos. 09-cv-00215, 09-cv-00296, and 09-cv-00606)*

In re LEVEL 3 COMMUNICATIONS, INC. SECURITIES LITIGATION

---

**DEFENDANTS' COMBINED MOTION AND BRIEF TO
DISMISS PLAINTIFF'S AMENDED CONSOLIDATED COMPLAINT**

---

<u>Certification</u>:  Under Local Rule 7.1(A) and Judge Brimmer's Practice Standards (Civil Cases), section III(F)(2), counsel for defendants conferred in good faith with counsel for plaintiff regarding the relief requested in this motion.  Plaintiff opposes the relief sought.

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT .......................................................................................................... 4

    I.     PLAINTIFF MUST SATISFY HEIGHTENED PLEADING
          STANDARDS ........................................................................................ 4

    II.    THE COMPLAINT REMAINS AN IMPERMISSIBLE "PUZZLE
          PLEADING." ......................................................................................... 5

    III.   PLAINTIFF ALSO FAILS TO PLEAD WITH PARTICULARITY A
          MATERIAL MISREPRESENTATION OR OMISSION ..................................... 6

          A.     The Challenged Statements Are Immaterial ............................... 6

          B.     Defendants Disclosed the Allegedly Omitted Facts ................................ 8

          C.     Plaintiff Does Not Plead the Falsity of Defendants' Statements ............ 10

               1.     The new allegations about internal reports do not contradict
                     defendants' statements ................................................................. 11

               2.     The other "true facts" do not contradict defendants'
                     statements ................................................................................... 13

               3.     The alleged "admissions" do not contradict defendants'
                     statements ................................................................................... 14

    IV.   PLAINTIFF ALSO FAILS TO PLEAD PARTICULARIZED FACTS
          CREATING A STRONG INFERENCE OF SCIENTER ................................... 15

          A.     The Confidential Witness and Internal Report Allegations Do Not
                Support an Inference of Scienter ............................................... 16

                1.     The confidential witness allegations are inadequate ................... 16

                2.     The allegations about internal reports are inadequate ................. 18

          B.     The Alleged Stock Sales Do Not Support an Inference of Scienter ........ 19

          C.     The Other Alleged Generic "Motives" Do Not Support an
                Inference of Scienter ............................................................... 20

       1.     The cash and equity compensation allegations are inadequate ..................................................................................... 20

       2.     The allegations about acquisitions and credit refinancing are inadequate .............................................................. 21

    D.    The Alleged "Admissions" Do Not Support an Inference of Scienter ...................................................................................... 22

    E.    Viewed in Their Totality, the Allegations Do Not Create a "Cogent" and "Compelling" Inference of Scienter ................................ 23

V.    PLAINTIFF ALSO FAILS TO PLEAD LOSS CAUSATION ........................... 23

VI.    PLAINTIFF FAILS TO PLEAD A SECTION 20(a) CLAIM ........................... 25

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Kinder-Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003)........................................................................*passim*

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
   505 F. Supp. 2d 662 (D. Colo. 2007) ..................................................................... 6

*Arst v. Stifel, Nicolaus & Co.*,
   86 F.3d 973 (10th Cir. 1996)................................................................................... 6

*Brodsky v. Yahoo! Inc.*,
   592 F. Supp. 2d 1192 (N.D. Cal. 2008) ................................................................. 5

*Calif. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004)................................................................................... 18

*City of Philadelphia v. Fleming Cos., Inc.*,
   264 F.3d 1245 (10th Cir. 2001)........................................................................*passim*

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................... 4, 23

*Galvin v. McCarthy*,
   545 F. Supp. 2d 1176 (D. Colo. 2008) ................................................................. 25

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006)............................................................................. 16

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008)................................................................................. 16

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997)........................................................................*passim*

*Halperin v. eBanker USA.com, Inc.*,
   295 F.3d 352 (2d Cir. 2002)..................................................................................... 8

*In re 2007 Novastar Fin. Inc. Sec. Lit.*,
   379 F.3d 878 (8th Cir. 2009)................................................................................... 5

*In re Alcatel Sec. Lit.*,
    382 F. Supp. 2d 513 (S.D.N.Y. 2005) ..................................................................... 5, 15

*In re Azurix Corp. Sec. Lit.*,
    198 F. Supp.2d 862 (S.D. Tex. 2002) .................................................................... 8, 11

*In re Best Buy Co., Inc. Sec. Lit.*,
    No. 03-6193-ADM/AJB, 2005 WL 839099 (D. Minn. Apr. 12, 2005) ...................... 7

*In re BISYS Sec. Lit.*,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005) ...................................................................... 21

*In re Downey Sec. Lit.*,
    No. CV 08-3261-JFW (RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ........ 18

*In re Elan Corp. Sec. Lit.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008) ...................................................................... 18

*In re Entrust Sec. Lit.*,
    No. 2:00CV119, 2002 WL 31968321 (E.D. Tex. Sept. 30, 2002) .............................. 5

*In re FX Energy, Inc. Sec. Lit.*,
    2:07-CV-874CW, 2009 WL 1812828 (D. Utah June 25, 2009) .......................*passim*

*In re Hansen Natural Corp. Sec. Lit.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................................... 7

*In re IAC/Interactivecorp Sec. Lit.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007) ...................................................................... 14

*In re K-tel Int'l, Inc. Sec. Lit.*,
    300 F.3d 881 (8th Cir. 2002) .................................................................................... 11

*In re MCI WorldCom, Inc. Sec. Lit.*,
    191 F. Supp. 2d 778 (S.D. Miss. 2002) ...................................................................... 7

*In re Party City Sec. Lit.*,
    147 F. Supp. 2d 282 (D.N.J. 2001) .......................................................................... 20

*In re Qwest Commc'ns Int'l, Inc. Sec. Lit.*,
    387 F. Supp. 2d 1130 (D. Colo. 2005) .................................................................... 15

*In re Qwest Commc'ns Int'l, Inc. Sec. Lit.*,
    396 F. Supp. 2d 1178 (D. Colo. 2004) .................................................................... 20

*In re Razorfish, Inc. Sec. Lit.*,
  No. 00Civ.9474, 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001) ................................................7

*In re Rhythms Sec. Lit.*,
  300 F. Supp. 2d 1081 (D. Colo. 2004) ....................................................................................... 6

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  No. C-99-00109-SBA, 2000 WL 1727377 (N.D. Cal. Sept. 29, 2000) .................................. 25

*In re Sportsline.com Sec. Lit.*,
  366 F. Supp. 2d 1159 (S.D. Fla. 2004) ..................................................................................... 20

*In re Sun Healthcare Group, Inc. Sec. Litig.*,
  181 F. Supp. 2d 1283 (D.N.M. 2002) ................................................................................... 6, 23

*In re Syntex Corp. Sec. Lit.*,
  95 F.3d 922 (9th Cir. 1996) ...................................................................................................... 19

*In re The Loewen Group, Inc. Sec. Lit.*,
  No.Civ.A. 98-6740, 2003 WL 22436233 (E.D. Pa. July 16, 2003) ........................................... 8

*In re Williams Sec. Lit. – WCG Subclass*,
  558 F.3d 1130 (10th Cir. 2009) ................................................................................................ 23

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc.*,
  537 F.3d 527 (5th Cir. 2008) .................................................................................................... 16

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ..................................................................................................... 22

*Kane v. Madge Networks N.V.*,
  No. C-96-20652-RMW, 2000 WL 33208116 (N.D. Cal. May 26, 2000) ................................. 10

*Kapur v. USANA Health Sciences, Inc.*,
  2008 WL 2901705 (D. Utah July 23, 2008) ....................................................................... 11, 13

*Koch v. Koch Indus.*,
  203 F.3d 1202 (10th Cir. 2000) .................................................................................................. 4

*Konkol v. Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) ............................................................................................... 18, 19

*Kurtzman v. Compaq Computer Corp.*,
  No. H-99-779, 2002 WL 32442832 (S.D. Tex. Mar. 30, 2002) ............................................ 7, 8

*Lattanzio v. Deloitte & Touche LLP*,
476 F.3d 147 (2d Cir. 2007) ............................................................. 24

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) ......................................................... 23, 24

*Ley v. Visteon Corp.*,
540 F.3d 376 (6th Cir. 2008) ........................................................... 16

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .......................................................... 19

*Maher v. Durango Metals, Inc.*,
144 F.3d 1302 (10th Cir. 1998) ........................................................ 25

*Malin v. XL Capital Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007) ............................................ 17, 18

*McDonald v. Kinder-Morgan, Inc.*,
287 F.3d 992 (10th Cir. 2002) .......................................................... 10

*McNamara v. Pre-Paid Legal Servs., Inc.*,
189 F. App'x. 702 (10th Cir. 2006) ............................................... 21, 25

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ...................................................... 18, 20

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*,
No. 04-cv-1030-RPM, 2005 WL 4161977 (D. Colo. Oct. 20, 2005) .............. 22, 25

*Pirraglia v. Novell, Inc.*,
339 F.3d 1182 (10th Cir. 2003) .................................................. 6, 16, 22

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ...................................................... 13, 19, 20

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996) .............................................................. 15

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ........................................................... 15

*Spiegel v. Tenfold Corp.*,
192 F. Supp. 2d 1261 (D. Utah 2002) ................................................. 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................ 4, 15, 16, 23

*The Sorkin, LLC v. Fischer Imaging Corp.*,
    No. 03-cv-631-RPM, 2005 WL 1459735 (D. Colo. June 21, 2005) ................................. *passim*

*West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
    No. 05-cv-01265-WDM-MEH, 2008 WL 4838671 (D. Colo. Nov. 6, 2008) ......................... 24

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007) ........................................................... 15

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999) .......................................................... 23

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .......................................................... 17

## STATUTES

15 U.S.C. § 78u-4 (Private Securities Litigation Reform Act of 1995) ................................. *passim*

Securities Exchange Act of 1934
    Section 10 ................................................................................ 4
    Section 20 ............................................................................ 4, 25

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ....................................................................... 2, 5

Fed. R. Civ. P. 9 ..................................................................... 2, 4, 5

Fed. R. Civ. P. 12 ........................................................................ 2

Local Rule 7.1 ............................................................................ 2

# INTRODUCTION

Plaintiff's complaint confirms that he cannot state a claim for securities fraud.  Plaintiff again claims that Level 3 Communications, Inc. revealed in an October 2007 announcement that the Company and five of its officers and directors defrauded the market in a series of statements issued over a one-year Class Period (October 17, 2006 to October 23, 2007).  In that October 2007 announcement, Level 3 lowered its financial guidance for its upcoming fourth quarter 2007 and fiscal year 2008.  The Company explained that it had encountered unexpected difficulty resolving problems in fulfilling orders (called "provisioning"), partly due to the complexity of working with multiple systems from six companies it had recently acquired.  According to plaintiff, defendants knew all along – and hid from investors – that this would happen.

After filing two complaints, plaintiff still does not come close to meeting the Private Securities Litigation Reform Act's stringent pleading requirements.  Plaintiff's latest complaint makes only one real change:  He now identifies the purported sources of his allegations concerning the "problems" that Level 3 encountered when integrating the acquisitions – four internal reports and sixteen "confidential witnesses."  It is no wonder that plaintiff did not identify these sources before, as they only confirm the complaint's multiple pleading failures.

The remainder of the current complaint repeats – reordered, but virtually unchanged – allegations contained in the prior complaint.  Once again, plaintiff presents an indecipherable "puzzle pleading."  Once again, plaintiff ignores and conceals through ellipses defendants' actual statements, which – contrary to plaintiff's central allegation – repeatedly stated that Level 3 was still working on unifying the acquired companies' separate systems.  And plaintiff fails to allege any facts that contradict defendants' actual statements.  As to scienter, plaintiff again relies on

1

automatic stock transactions designed to pay withholding taxes, other generic "motives" common to all companies and executives, and post-Class Period "admissions" that admit nothing about Level 3's earlier statements or its executives' state of mind.  Finally, plaintiff still fails to show that his alleged losses were caused by the alleged false statements.

The complaint again exemplifies fraud-by-hindsight pleading that the Reform Act forbids.  It should be dismissed under Rules 8, 9(b), and 12(b)(6), and Local Rule 7.1, without further leave to amend.

## BACKGROUND[1]

Level 3 provides telecommunications services.  (AC ¶ 29.)  In 2005 and 2006, Level 3 acquired five companies:  WilTel, Progress, ICG, TelCove, and Looking Glass.  (AC ¶¶ 6, 42, 45-47, 51.)  On the Class Period's first day (October 17, 2006), Level 3 announced its planned acquisition of Broadwing in January 2007.  (AC ¶¶ 7, 52.)

Quarter after quarter throughout the Class Period, Level 3 issued guidance projecting financial results for the upcoming quarter, as well as for the current and next fiscal years.  It met or exceeded the projections each time.  (Ex. E at 3; Ex. H at 3; Ex. K at 3; AC ¶ 96.)[2]  The Company grew during the Class Period:  Core Communications Services Revenues increased from $544 million in the third quarter of 2006 to $909 million in the third quarter of 2007, with quarter-over-quarter "organic" growth (that is, before considering the effects of the acquisitions) between 2% and 8%.  (Ex. F at 55; Ex. H at 3; Ex. K at 3; Ex. L at 4, 5; Ex. N at 2-3.)  Plaintiff

---

[1] This section is based on the Complaint, the documents cited therein, and other judicially noticeable material.  *See* Motion Requesting Judicial Notice, filed herewith.  All exhibits cited in this Motion are attached to the Declaration of Brian Hoffman, filed herewith.  For quotations, all emphasis is added and all citations omitted.

[2] Level 3 reported Core Communications Services Revenues for the second quarter 2007 of $888 million, which was immaterially below its guidance of $890-$910 million.  (Ex. L at 4.)

never challenges the accuracy of Level 3's reported results or the reasonableness of its forecasts.

Before and during the Class Period, Level 3 also regularly updated investors on the status of its efforts to integrate the acquired companies. As to five of the acquisitions (Progress, ICG, Looking Glass, TelCove, and Broadwing), Level 3 stated that "the majority of the integration activity and investment will be incurred in 2007" and 2008. (Ex. H at 14; Ex. C at 1; *see also* AC ¶ 58.) As to WilTel – a late-2005 acquisition – Level 3 stated that it completed "[a] majority of the physical network interconnections" in 2006 and early 2007. (Ex. E at 5; AC ¶ 58; *see also* AC ¶¶ 64, 72; Ex. B at 5.) Level 3 also noted that "IT system development work" and "backbone route consolidation" (called "route integration" in the Complaint) would continue throughout 2007. (Ex. B at 5; AC ¶¶ 72, 107; *see also* Ex. E at 5; AC ¶ 64.) Level 3 projected spending approximately $175 to $200 million on integration efforts in 2007. (Ex. G at 7.)

Despite positive results and "good progress on the overall integration front," Level 3 announced on July 26, 2007 that the previously disclosed "operational complexity" of its "hybrid systems environment" (*i.e.*, that it was operating with systems from six acquired companies) increased average provisioning times. (AC ¶ 87.) Level 3 also discussed personnel and process changes it was making to address these "operational challenges." (Ex. L at 3.)

On October 23, 2007, the end of the Class Period, CEO James Crowe stated that despite "strong sales," "the breadth of the problem was greater than we had earlier diagnosed, and we did not increase provisioning capacity as we had expected." (AC ¶ 96; Ex. N at 1.) Level 3's "physical network integration," however, still was "progressing well." (AC ¶ 102.) Although it met its third quarter 2007 projections, Level 3 reduced its guidance for the upcoming fourth quarter 2007 and fiscal year 2008. (AC ¶ 96.) Level 3's stock price dropped from $4.32 per

share on October 22 to $3.28 on October 23.  (AC ¶ 103.)

Over fifteen months later, plaintiff filed his first complaint accusing defendants of violating Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (#1).  Five months later, plaintiff amended his claims in a second complaint (#68).  Defendants moved to dismiss that complaint (#74 and 86).  More than four months after briefing was completed, plaintiff moved to amend his claims again (#92).  The Court accepted this Complaint for filing on March 23, 2010 (#98 and 100).

## ARGUMENT

## I.      PLAINTIFF MUST SATISFY HEIGHTENED PLEADING STANDARDS.

To plead securities fraud, plaintiff must allege that defendants (1) made a material misrepresentation or omission, (2) with scienter, (3) that caused plaintiff's loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  Under Rule 9(b), plaintiff must "state with particularity the circumstances constituting fraud," including "the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof."  *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

Plaintiff further must meet the "[e]xacting pleading requirements" of the Reform Act (15 U.S.C. §§ 78u-4(b)(1)-(2)).  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  The Reform Act "strengthened what is required adequately to plead" both falsity and scienter.  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).  "Generalized or conclusory allegations" do not suffice; plaintiff must allege "specific facts that support" his falsity claims.  *Id.* at 1098.  In addition, when ruling on a motion to dismiss, courts review the full context and actual text of the challenged statements, not just the Complaint's excerpts.  *See,*

4

*e.g., Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997).  To allege a "strong inference of scienter," plaintiff must allege "particular facts that would convince a reasonable person that the defendant knew a statement was false or misleading."  *Adams*, 340 F.3d at 1105.

The Complaint fails to meet the "very stringent pleading standard[s]" for pleading falsity, scienter, and loss causation.  *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1259 (10th Cir. 2001).

## II.   THE COMPLAINT REMAINS AN IMPERMISSIBLE "PUZZLE PLEADING."

Like the prior complaint, this Complaint is an incoherent "puzzle pleading" that fails to satisfy the Reform Act's and Rule 9(b)'s requirements of particularity, as well as Rule 8(a)'s requirement to plead a "plain statement of the claim."  Plaintiff continues to quote large blocks of material from defendants' public statements, italicize and place in bold certain text for unspecified reasons, and every few pages cross-refer to generalized and conclusory "true facts" that the statements presumably failed to disclose.  Indeed, this Complaint is even more confusing, because now the reader must *further* cross-reference the "true facts" to another group of vague allegations about four internal reports and sixteen confidential witnesses.

Because these tactics burden the courts and the parties, numerous courts have rejected similar complaints on this ground.  *See, e.g., In re 2007 Novastar Fin. Inc. Sec. Lit.*, 379 F.3d 878, 883-84 (8th Cir. 2009); *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1198 (N.D. Cal. 2008); *In re Alcatel Sec. Lit.*, 382 F. Supp. 2d 513, 534 (S.D.N.Y. 2005); *In re Entrust Sec. Lit.*, No. 2:00CV119, 2002 WL 31968321, at *3-4 (E.D. Tex. Sept. 30, 2002); *see also The Sorkin, LLC v. Fischer Imaging Corp.*, No. 03-cv-631-RPM, 2005 WL 1459735, at *10 (D. Colo. June 21, 2005).  This Complaint likewise should be dismissed.

### III.   PLAINTIFF ALSO FAILS TO PLEAD WITH PARTICULARITY A MATERIAL MISREPRESENTATION OR OMISSION.

Plaintiff must "plead with particularity the facts surrounding the alleged fraud, including identifying the specific misleading statements or omissions and the reasons why they are misleading." *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 675 (D. Colo. 2007); *see also* 15 U.S.C. § 78u-4(b)(1).  "[I]f an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  Plaintiff still fails to meet these standards for the twenty-one Class Period "false statement[s]" attributed to defendants.  (AC ¶¶ 54-55, 58-59, 62-67, 71-75, 79-80, 82-83, 87-88, 90.)[3]

### A.   The Challenged Statements Are Immaterial.

The Complaint claims that Level 3's "business performance was being severely impacted by the botched integration of the acquired businesses," but plaintiff never questions the accuracy or reasonableness of *any* of Level 3's actual or projected financial results.  (AC ¶ 9.) Specifically, plaintiff does not contest that the Company reasonably took integration issues into account in its regular financial guidance to investors.  *See Sorkin*, 2005 WL 1459735, at *5.  By

---

[3] Plaintiff's renewed challenge to three types of statements again fails for additional reasons.  First, statements issued before the Class Period are not actionable.  (AC ¶¶ 15, 42-53, 185); *see In re Sun Healthcare Group, Inc. Sec. Litig.*, 181 F. Supp. 2d 1283, 1293 (D.N.M. 2002).  Second, Lead Plaintiff Poppo cannot challenge statements made after his last purchase of Level 3 stock on July 26, 2007, because the later statements cannot have affected his decision to purchase shares.  (AC ¶¶ 28, 90, 91, 95, 96-102, certificate attached to the consolidated complaint); *see Arst v. Stifel, Nicolaus & Co.*, 86 F.3d 973, 977 (10th Cir. 1996).  That Mr. Poppo alleges a class action does not absolve him of first stating an individual claim.  *See In re Rhythms Sec. Lit.*, 300 F. Supp. 2d 1081, 1085 (D. Colo. 2004).  Third, defendants are not liable for statements made by analysts or reporters, because plaintiff fails to allege facts showing that defendants were "sufficiently entangled with the report[s]" to have "placed their imprimatur" on them.  *In re Sun Healthcare Group,* 181 F. Supp. 2d at 1292; *see also* (AC ¶¶ 57, 60, 61, 81, 91); *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1189 n.10 (10th Cir. 2003).

not challenging the reasonableness of Level 3's projections, plaintiff concedes that the alleged "problems" were immaterial. *See In re Best Buy Co., Inc. Sec. Lit.*, No. 03-6193-ADM/AJB, 2005 WL 839099, at *9-10 (D. Minn. Apr. 12, 2005).[4]

Putting aside this basic flaw, many of the alleged "false statement[s]" are "immaterial statements of corporate optimism." *Grossman*, 120 F.3d at 1121. These "soft, puffing statements, incapable of objective verification" are not material "because reasonable investors do not rely on them in making investment decisions." *Id*. at 1119, 1121-22.

For example, defendants Crowe, O'Hara, and Patel stated that they were "pleased with the [integration's] progress" and that it was "generally done, substantially done," "tracking within expectations," "progressing well," "job #1," and a "top priority." (AC ¶¶ 58, 64, 72, 79-80, 83; *see also id.* ¶¶ 54-55, 59, 63, 73, 87-88, 90-91.) Courts around the country have found these types of statements immaterial. The Tenth Circuit affirmed dismissal when defendants described an integration as "faster than we thought" and a "substantial success." *Grossman*, 120 F.3d at 1117, 1121-22. Another court dismissed similar claims based on statements that the "integration is complete" and the company "successfully integrated our acquisitions." *In re Razorfish, Inc. Sec. Lit.*, No. 00Civ.9474, 2001 WL 1111502, at *2 (S.D.N.Y. Sept. 21, 2001); *see also, e.g., In re MCI WorldCom, Inc. Sec. Lit.*, 191 F. Supp. 2d 778, 786 (S.D. Miss. 2002); *Kurtzman v. Compaq Computer Corp.*, No. H-99-779, 2002 WL 32442832, at *16-18 (S.D. Tex.

---

[4] Plaintiff claims that Level 3 "missed Network Expense" reductions and monthly recurring revenue. (AC ¶ 164(e).) Plaintiff, however, neither alleges specific facts nor argues that the missed items materially affected Level 3's projections or results. *See Adams*, 340 F.3d at 1104, n. 4. Moreover, the drop in Level 3's stock price at the end of the Class Period does not indicate that defendants' prior statements were material, because plaintiff fails to show that this decline had anything to do with those statements. *See* (*infra*, section V); *In re Hansen Natural Corp. Sec. Lit.*, 527 F. Supp. 2d 1142, 1161 (C.D. Cal. 2007).

Mar. 30, 2002); *In re Aetna, Inc. Sec. Lit.*, 34 F. Supp. 2d 935, 947 (E.D. Pa. 1999).

Plaintiff now also claims that defendants O'Hara and Patel misled investors by stating that Level 3 was a "logical consolidator."  (AC ¶¶ 15, 65, 67, 71, 74, 82.)[5]  Level 3's "expressions of confidence in its management or business are not actionable."  *In re Azurix Corp. Sec. Lit.*, 198 F. Supp.2d 862, 882 (S.D. Tex. 2002); *see also* (AC ¶¶ 55, 59, 64-67, 71, 73-75, 79-80, 82-83, 87-88.)  One court, in fact, rejected claims based on an almost identical statement – that a company was a "consolidator of choice."  *In re The Loewen Group, Inc. Sec. Lit.*, No.Civ.A. 98-6740, 2003 WL 22436233, at *16 (E.D. Pa. July 16, 2003).

**B.     Defendants Disclosed the Allegedly Omitted Facts.**

Plaintiff also fails to plead falsity for another fundamental reason:  Defendants disclosed the allegedly omitted information.  *See Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 361 (2d Cir. 2002).  According to plaintiff, defendants said that "the WilTel integration was virtually complete" and other integrations were "on track."  (AC ¶¶ 8, 110.)  Plaintiff claims this was "blatantly false" because defendants omitted that the "integration of network inventory and provisioning *systems* for each of the acquired businesses was in a state of chaos and had neither been mapped, initiated nor completed by defendants throughout the Class Period." (AC ¶¶ 9-10.)

In truth, Level 3 said only that it had completed a "majority" of WilTel's "*physical* network interconnections."  (AC ¶¶ 54, 58, 63, 64, 72.)[6]  Before and throughout the Class Period,

---

[5] Plaintiff also attributes this statement to a non-defendant Level 3 employee and to nobody at all.  (AC ¶¶ 11, 15, 66, 75.)  This does not support liability.  (*See infra.*, note 15.)

[6] Plaintiff cites only one time that anybody said that the "WilTel integration [was] complete."  (AC ¶ 57.)  But this analyst report from October 20, 2006 is not actionable (*supra*, note 3) and is contradicted by defendants' statements.

defendants consistently disclosed that *systems* work would continue through 2007 and 2008.[7]

| Date | Level 3's Disclosures Regarding Work to Be Done on WilTel Integration |
|---|---|
| **July 25, 2006** | "The consolidated IT applications and system have been identified, [and] some have been put in place.  But *the overall IT development work will extend into 2007.*  In addition, backbone route consolidation is being completed opportunistically and will extend *into 2007.*  However, starting in the fourth quarter of this year and extending into the future, most of the work in both of these areas will be difficult to ascribe directly to the integration but instead will become much more part of business as usual for Level 3." (Ex. B at 5.) |
| **October 17, 2006** | "[K]eep in mind *we have integration costs incurring in '07 and '08…the bulk of the integration will take 18 months.*"  (Ex. D at 7, 8.) |
| **October 24, 2006** | "[C]ollapsing all back office systems on to a single set of desired end state systems *will take some time*…all completed acquisitions are expected to migrate onto these same back office systems *over time.*  However, it's increasingly difficult to allocate the process in systems work between integration activities and business as usual." (Ex. E at 5.) |
| **December 4, 2006** | "[W]e still have to get back-office integrations done like the link systems…[a] lot of the IT and the operating support systems, provisioning systems, order entry systems, *all of that is in progress right now*."  (AC ¶ 64.) |
| **February 8, 2007** | "The remaining activities for WilTel are primarily tied to *ongoing IT system development work.*" (AC ¶ 72; Ex. H at 5.)  There "will be some integration-related expense in '08.  *There is a long tail on some of that system work* and the like." (Ex. H at 10.) |
| **April 26, 2007** | While "redesigning our operating support systems…we are often working in a hybrid systems environment that has elements of both the legacy Level 3 systems, and various systems of the 7 acquisitions." (Ex. K at 6.)  This "will continue in varying degrees until the development of the end state systems are completed…. [N]ew systems releases [come] each month during 2007, but *this work will continue through 2008.*" (*Id.*)  This "is complicated and requires a lot of heavy lifting….  *In the IT area in particular, much of that lifting is still ahead of us.*" (*Id.* at 6-7.) |
| **July 26, 2007** | "From the beginning, we have said that we would be substantially complete with integration in 2007, but the *systems work would continue through 2008.*  We remain on track with both of those objectives."  (Ex. L at 3; *see also id.* at 8; AC ¶ 87.) |

---

[7] Defendants also consistently disclosed that all aspects of integrating the metro acquisitions (Progress, ICG, TelCove, and Looking Glass) would continue throughout 2007 and into 2008.  (*See* Ex. H at 5 (omitted from AC ¶ 72 with ellipses), 8, 14; Ex. K at 6 (omitted from AC ¶ 79 with ellipses), 7; Ex. L at 3; AC ¶¶ 58, 64, 83, 87, 88.)  And in October 2006, defendants said "we expect [Broadwing] integration efforts to extend into 2008." (Ex. C at 1.)

| | "*[W]ork will continue through 2008*" on the "hybrid environment"; "this is the most complex part of the integration."  (Ex. L at 3; AC ¶ 87.) |

Indeed, every Class Period SEC filing also noted that Level 3's "financial condition and growth depends upon the successful integration of acquired businesses" and that it "may not be able to efficiently and effectively integrate recently acquired operations," referring to all six acquisitions.  (Ex. I at 38; *see also id.* at 1, 40; Ex. F at 68-69; Ex. C at 2.)  These were risks precisely because the integrations had not yet been completed.  (*See* Ex. D at 12; Ex. H at 7; AC ¶¶ 55, 59, 64, 79-80, 87.)

Plaintiff cannot avoid dismissal by mischaracterizing and ignoring the actual statements. *See Grossman*, 120 F.3d at 1121; *In re FX Energy, Inc. Sec. Lit.*, 2:07-CV-874CW, 2009 WL 1812828, at *7-8 (D. Utah June 25, 2009).[8]

### C.   Plaintiff Does Not Plead the Falsity of Defendants' Statements.

Plaintiff also fails to plead falsity because his allegations about internal reports, other "true facts," and "admissions" do not demonstrate that defendants' statements were false or

---

[8] Plaintiff fails to show that defendants had an obligation to disclose the other allegedly omitted "true facts."  Plaintiff again claims that defendants omitted minutiae about the termination, hiring, training, and workloads of Level 3's personnel (AC ¶¶ 12, 15, 110-13, 116, 118-21, 123-27, 129-32, 145-46, 165(a)-(c), 166(c), 167, 169(a), 170(b), 171(c), 173, 176-77, 179(a)); specifics about the integration of particular software systems, use of multiple legacy systems, and a lone call center (AC ¶¶ 111, 113-17, 119-21, 123-26, 131-34, 144-45, 164(b)-(c), 165(a)-(e), 166(c), 167(a), 168, 169(b)-(c), 170(a), (c)-(f), (h)-(i), 171(b)-(c), 172(a), 173(a), 175(b)-(c), 178(b), 179(b)); and that customers experienced provisioning delays or service outages, and six "complained" (AC ¶¶ 13, 15, 108-09, 111-13, 116-17, 121-31, 141, 143-46, 164(d), (h), 166, 170(g), 171-75, 178(a), (c)-(d), 179(b), 184).  These matters are immaterial. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002).  Moreover, as discussed in section III(C), these alleged "true facts" do not contradict any of defendants' statements.  *See Grossman*, 120 F.3d at 1125.  In any event, defendants are not required to "disparage their own product lines or the skills of their managers."  *Kane v. Madge Networks N.V.*, No. C-96-20652-RMW, 2000 WL 33208116, at *8 (N.D. Cal. May 26, 2000).

misleading" when made.  *Adams*, 340 F.3d at 1099.[9]

   **1.**   *The new allegations about internal reports do not contradict defendants'*
         *statements.*

Plaintiff alleges that "recurring reports" noted "the status" of "Level 3's network

integration."  (AC ¶¶ 180-81.)  But plaintiff again alleges vague generalities and fails to identify

any "express statement" from a particular report, *In re FX Energy*, 2009 WL 1812828, at *8, that

"contradict[s] the accuracy or completeness of [defendants'] statements."  *Kapur v. USANA*

*Health Sciences, Inc.*, 2008 WL 2901705, *15 (D. Utah July 23, 2008).[10]

Plaintiff's only new allegations concern four reports from December 2006, "mid-January

2007," "early April 2007," and "mid-October 2007."[11]  (AC ¶¶ 136-39.)  These allegations,

however, just confirm the Complaint's insufficiency.

Plaintiff claims that the December 2006 and January 2007 reports show that Level 3 "had

utilized" $12.8 million of the "allocated" $30.2 million "to completing [both] the transport

interconnects and route integration for WilTel."  (AC ¶¶ 136-37.)  Level 3 had stated that it

---

   [9] For the reasons discussed in this section III(C) and below in section IV(A), plaintiff
fails to satisfy the six factors identified by the Tenth Circuit to gauge compliance with the
Reform Act's requirements for pleading falsity:  "(1) the level of detail provided by the facts
stated in a complaint; (2) the number of facts provided; (3) the coherence and plausibility of the
facts when considered together; (4) whether the source of the plaintiff's knowledge about a
stated fact is disclosed; (5) the reliability of the sources from which the facts were obtained; and
(6) any other indicia of how strongly the facts support the conclusion that a reasonable person
would believe that the defendant's statements were misleading."  *Adams*, 340 F.3d at 1099.

   [10] As with the prior complaint, plaintiff's vague allegations about an "Integration Steering
Committee" and other "frequent recurring meetings" fail for this reason.  (AC ¶¶ 181-82.)

   [11] Plaintiff claims that these four reports "confirm it was impossible" for Level 3's
statements about WilTel to be true.  (AC ¶ 140.)  Defendants made the challenged statements
mentioning WilTel, however, between October 2006 and February 2007.  (AC ¶¶ 54, 58, 63, 64,
72.)  Plaintiff's allegations thus constitute nothing more than rejected "fraud by hindsight."
*Grossman*, 120 F.3d at 1124; *see also In re Azurix*, 198 F. Supp.2d at 882.  In addition, the later
reports are irrelevant to establishing defendants' alleged scienter for earlier statements.  *See id.* at
890-91; *In re K-tel Int'l, Inc. Sec. Lit.*, 300 F.3d 881, 891 (8th Cir. 2002); (*infra.*, section IV(A)).

completed "a majority of the physical network interconnections," but said nothing about the money left to spend on that task or about route integration.  (AC ¶ 58; *see id.* ¶¶ 54, 72.)  That Level 3 "committed" or "devoted" additional capital to complete WilTel's route integration in 2007 is consistent with defendants' prior statements that "backbone route consolidation...will also extend into 2007."  (AC ¶¶ 136, 137; Ex. B at 5.)[12]

Plaintiff claims that the January, April, and October 2007 reports show that "Level 3 had yet to complete transport interconnects in 17 major WilTel markets."  (AC ¶¶ 137-39.)  But plaintiff only identifies four markets, none of which is "major":  "Las Vegas, Stamford, Hartford, and San Luis Obispo."  (AC ¶¶ 137-38.)  Nor is alleging 17 remaining markets meaningful; plaintiff never specifies how many WilTel markets originally required transport interconnects.  In fact, WilTel provided access to "50 new markets."  (AC ¶ 42.)

Plaintiff claims that the same three reports also show that Level 3 "had integrated less than one-fifth of WilTel route[s] into Level 3's network."  (AC ¶¶ 137-39.)  But plaintiff only identifies four specific routes that were not integrated:  "Cleveland to New York, Jacksonville to Miami, Chicago to Minneapolis, and Omaha to Dayton."  (AC ¶¶ 137-38.)  And the Complaint varies by almost seven-fold on how many miles WilTel added to Level 3's network and that required integrating (3,000 or 20,000).  (*Compare* AC ¶ 42 *with* ¶ 139.)  Plaintiff's allegations thus do not prove "impossible" defendants' statements about WilTel integration efforts.  (AC

_____

[12] Plaintiff also claims that Level 3 "devoted" $4 million to "completing the WilTel... transport interconnects" in 2007.  (AC ¶ 137.)  This is consistent with defendants' statements in 2006 and early 2007 that Level 3 had completed "the majority," "a significant portion," or "most" – but not all – of the WilTel interconnections.  (AC ¶¶ 54, 58, 63, 72; *see also* ¶¶ 60, 64.)

¶¶ 64, 140; *see also* AC ¶¶ 54, 58, 63, 69(a), 72.)[13]

      **2.**    *The other "true facts" do not contradict defendants' statements.*

The Complaint's other "true facts" allege the same hodgepodge of "problems" as before, *e.g.*, customer delays, issues with particular software programs and a call center, and personnel issues. (*See supra*, note 8; AC ¶¶ 107-46.) But "[p]roblems and difficulties are the daily work of business people. That they exist does not make a lie out of any of the alleged false statements." *Ronconi v. Larkin,* 253 F.3d 423, 434 (9th Cir. 2001). Rather, plaintiff must allege particularized facts showing that the problems "*contradict* the accuracy or completeness" of defendants' actual statements. *Kapur*, 2008 WL 2901705, at *15; *see also Ronconi*, 253 F.3d at 434.

None of the alleged problems contradicts defendants' actual statements. For example, plaintiff's generalized hyperbole about "horrific," "severe," or "unbearable" delays do not contradict defendants' statements that the "overall customer experience [was] still positive." (AC ¶¶ 79, 87, 112, 121, 124; *see also* AC ¶¶ 72, 90-91, 184; *supra*, note 8; Ex. L at 9.) Plaintiff's allegations about seven named customers also are insufficient. One, with an immaterial $20,000 order, allegedly called only "to express its frustration." (AC ¶ 130.) Another allegation concerns issues occurring before the Class Period. (AC ¶¶ 128, 174(a)-(b).) A third customer allegedly canceled "portions" of its business, but plaintiff never alleges how much. (AC ¶¶ 129, 174(c)-(d), 175.) Plaintiff does not claim that the fourth customer ever

---

[13] Nor do plaintiff's allegations about the four reports contradict defendants' statements about the metro acquisitions or that Level 3 "made significant progress on the integration *of all acquisitions*." (AC ¶ 79 (emphasis added); *see also id.* ¶¶ 58, 64, 72, 87.) Three reports discuss only WilTel. (*See* AC ¶¶ 136-38.) The final report, stating that additional "route integration of the acquired companies" remained, is consistent with defendants' prior statements that integrating the metro acquisitions and "backbone route consolidation" would continue throughout 2007 and into 2008. (Ex. B at 5; AC ¶ 139; *see also* AC ¶¶ 58, 64, 83, 87, 88.)

complained about the alleged issues.  (AC ¶ 164(d).)  And plaintiff's final customer allegations

state that Level 3 met with three customers "to help resolve their complaints."  (AC ¶¶ 144,

170(g).)  These allegations are "consistent with unremarkable circumstances," not fraud.  *In re*

*IAC/Interactivecorp Sec. Lit.*, 478 F. Supp. 2d 574, 592-93 (S.D.N.Y. 2007).

Similarly, plaintiff's allegations about Level 3's use of "multiple legacy systems" cannot

possibly contradict defendants' statements when they stated that "system development work"

would continue *throughout 2007 and into 2008*.  (Ex. H at 5; AC ¶¶ 116; *see also* Ex. E at 5; Ex.

H at 8, 10, 14; Ex. K at 6-7; Ex. L at 3, 8; AC ¶¶ 58, 64, 72, 79, 83, 87-88.)  And vague

allegations about "major difficulties," "abysmal failure[s]," and "disaster[s]" in integrating

specific software programs and a call center do not contradict defendants' statements that

integration efforts were ongoing and that challenges would arise.  (AC ¶¶ 13, 111, 117; *see also*

Ex. D at 12; Ex. I at 1, 38-40; Ex. F at 68-69; AC ¶¶ 55, 58-59, 64, 72, 79-80, 87-88, 90-91.)[14]

> **3.**    *The alleged "admissions" do not contradict defendants' statements.*

Lastly, plaintiff again claims that defendants admitted the falsity of their statements.  (AC

¶¶ 96-102, 147-51, 153, 155-61, 186-88.)  They did not.  For example, defendants' post-Class

Period "admission" that integration efforts continued in 2008 is just what Level 3 had said all

along.  (*See, e.g.,* AC ¶¶ 64, 87-88, 147-48, 155, 158-59.)  Plaintiff also points to post-Class

Period discussions about prior "service delivery" and "service quality" deteriorations and, in

---

[14] Plaintiff's conclusory allegations that Level 3 terminated all "subject matter experts" and failed to provide training do not contradict defendants' public statements about headcount reductions, sales efforts, and that certain integration tasks involved "well over 200 people."  (AC ¶¶ 12, 15, 59, 72, 110, 126, 145; *see also id.* ¶¶ 64, 73, 79, 83, 87, 111-13, 118, 132.)  Moreover, plaintiff now claims that saying Level 3 has "proven integration experience" was false.  (AC ¶¶ 11, 15, 65-67, 71, 74-75, 82.)  But plaintiff does not allege any facts suggesting that there were problems with Level 3's previous "dozens of integrations."  (AC ¶ 88.)

plaintiff's words, "actions taken by the Company post-Class Period to fix the problems."  (AC

¶¶ 151, 153; *see also id.* ¶¶ 148-50, 154, 157-61.)  These matters, however, are consistent with

Level 3's statements that its "hybrid systems environment" "will continue through 2008" and

could cause "disruption[s] of ongoing business."  (*Supra* section III(B); AC ¶¶ 79, 87; Ex. I at

39; Ex. L at 3.)  "[I]t is clearly insufficient for plaintiff to say that the later, sobering revelations

make the earlier, cheerier statement a falsehood."  *Grossman*, 120 F.3d at 1124.

    In short, plaintiff's allegations still lack detail, reliability, plausibility, and coherence and

thus fail to plead falsity as required by the Reform Act.  *See Adams*, 340 F.3d at 1099.[15]

## IV.   PLAINTIFF ALSO FAILS TO PLEAD PARTICULARIZED FACTS CREATING A STRONG INFERENCE OF SCIENTER.[16]

    To plead scienter under the Reform Act, plaintiff must allege particularized facts showing

that defendants acted intentionally or recklessly.  *Tellabs*, 551 U.S. at 321; 15 U.S.C. § 78u-

4(b)(2).  Recklessness requires "conduct that is an *extreme departure* from the standards of

ordinary care, and which presents a danger of misleading buyers or sellers that is either known to

the defendant or is so obvious that the actor must have been aware of it."  *Fleming*, 264 F.3d at

1260.  Plaintiff cannot "allege facts from which an inference of scienter rationally *could* be

---

[15] The allegations against defendants Scott and Miller fail for the additional reason that they did not make any of the challenged statements.  Plaintiff cannot rely on the group pleading doctrine (AC ¶¶ 37-41) to hold them responsible for the statements.  Though various judges in this District have applied the doctrine after the Reform Act, "[t]he only courts of appeals to have directly addressed the survival of the group pleading doctrine post-PSLRA have abolished the doctrine." *Winer Family Trust v. Queen*, 503 F.3d 319, 336 (3d Cir. 2007); *see also Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).  Also, other than boilerplate, plaintiff does not plead particularized facts showing "that an individual defendant involved in a group published statement was aware of the falsity of the statement."  (AC ¶¶ 37-41); *In re Qwest Commc'ns Int'l, Inc. Sec. Lit.*, 387 F. Supp. 2d 1130, 1145 (D. Colo. 2005).

[16] Plaintiff's failure to allege falsity necessarily means that he also fails to allege scienter. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996).

drawn." *Tellabs*, 551 U.S. at 323.  The allegations must provide a *strong inference* that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324; *Pirraglia*, 339 F.3d at 1187-88.  The Complaint fails to support any inference of scienter, let alone one that is "cogent" and "compelling."[17]

## A.     The Confidential Witness and Internal Report Allegations Do Not Support an Inference of Scienter.

Plaintiff's prior complaint lacked any identified support for his scienter allegations. Plaintiff now claims that defendants "obtained direct knowledge that the integration of the acquired businesses was a disaster" based on allegations about sixteen confidential witnesses and four reports.  (AC ¶ 18.)  The allegations, however, should be accorded "little weight" because they lack "concrete information from relevant documents or people who were in a position to know the truth of the allegations."  *Adams*, 340 F. 3d at 1102.

### 1.     *The confidential witness allegations are inadequate.*

Confidential witness allegations are subject to close "examination" and warrant a "steep discount" because they "may have axes to grind, could be lying, or maybe [don't] even exist." *Sorkin*, 2005 WL 1459735, at *6; *In re FX Energy*, 2009 WL 1812828, at *10.  Plaintiff's confidential witness ("CW") allegations are no exception.

First, plaintiff does not show that the CWs have "first-hand knowledge" of the allegations attributed to them.  (AC ¶ 163); *see Sorkin*, 2005 WL 1459735, at *7.  For example, plaintiff relies on CW#2 for allegations about occurrences "[b]efore CW#2's employment started at

---

[17] Plaintiff again claims that Sarbanes-Oxley certifications show scienter.  (AC ¶¶ 30(c), 32(c).)  All circuit courts that have addressed the issue disagree.  *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008); *Ley v. Visteon Corp.*, 540 F.3d 376, 386-87 (6th Cir. 2008); *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc.*, 537 F.3d 527, 544-45 (5th Cir. 2008); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006).

Level 3." (AC ¶ 165(d).) Plaintiff relies on CW#3, who worked only on "Level 3's Optical Wave product," for broad allegations about order delays, customer complaints, and a different product ("IRUs"). (AC ¶ 166.) Plaintiff relies on CW#5, who allegedly worked on "sales support for Level 3's products and services," for allegations about "IT systems." (AC ¶ 168.) Plaintiff relies on CW#13, who "put[] together [provisioning] orders," for allegations about staffing decisions. (AC ¶ 176.) And plaintiff relies on CW#14, an "executive assistant" working on "billing disputes," for allegations about "inventory control and provisioning systems." (AC ¶ 177.)

Nor do the CWs' alleged positions – "customer project managers" (CW#4, 10, 14, 15; *see also* CW#3, 5), "proposal managers" (CW#10, 11, 12), "circuit design engineers" (CW#7, 8, 16; *see also* CW#9, 13), and "software analysts" (CW#4; *see also* CW#2) – describe individuals knowledgeable about Level 3's "transport interconnects," "route integration," financial reporting, or public statements. (AC ¶¶ 164-179.) Courts regularly reject similar CW allegations as lacking "reliability and personal knowledge." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009); *see also Sorkin*, 2005 WL 1459735, at *6-7.

Second, despite alleging that Level 3 operated with a "strict metric-based performance culture," the CW allegations are devoid of specifics and instead rest on vague hyperbole. (AC ¶ 164(f).) For example, plaintiff relies on CW#1, 2, 7, and 12 to allege that Level 3's operations were "a complete cluster-f!@#," an "unmitigated disaster," a "mess," "haphazard," "in a state of chaos," and "an unmanageable rat's nest." (AC ¶¶ 109, 164(a), 165(c), 170, 175(b).) These "generic and conclusory allegations based upon rumor or conjecture" are "inherently unreliable" and do not satisfy the Reform Act. *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 140 (D. Conn.

2007); *see also Sorkin*, 2005 WL 1459735, at *10; *Calif. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004).

Third, these allegations do not demonstrate scienter.  Plaintiff does not claim that fourteen of sixteen CWs ever once spoke to, or even met, a defendant.  (AC ¶¶ 165-66, 168-79); *see In re Elan Corp. Sec. Lit.*, 543 F. Supp. 2d 187, 220 (S.D.N.Y. 2008); *In re FX Energy*, 2009 WL 1812828, at *10.  Nor does plaintiff allege that these fourteen CWs were in positions to know whether any defendant was aware of the "true facts."  *See id.*; *In re Elan*, 543 F. Supp. 2d at 220-21. Plaintiff claims that CW#1 and 4 attended meetings that Mr. O'Hara also attended and at which undefined "integration and provisioning problems" and "increased order processing intervals" were discussed.  (AC ¶¶ 145, 164(h).)  This is too vague to show that Mr. O'Hara acted fraudulently.  *See Fleming*, 264 F.3d at 1265; *Sorkin*, 2005 WL 1459735 at *7-8.[18]

> **2.**   *The allegations about internal reports are inadequate.*

Plaintiff also claims that defendants "continuously monitored every aspect" of Level 3's integration efforts through various reports.  (AC ¶16; *see also id.* ¶¶ 17-18, 55, 59, 64, 73, 79-80, 83, 88, 136-40, 180-83, 185.)  But plaintiff fails to allege any instance when a defendant received a report that contradicted the public statements.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008); *Konkol*, 590 F.3d at 398.  "Mere access to internal reports," which is all plaintiff alleges, "does not establish a strong inference of scienter."  *Sorkin*, 2005 WL 1459735 at *10; *see In re Downey Sec. Lit.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670, *12 (C.D. Cal. Aug. 21, 2009).

---

[18] Claims that issues were "widely known throughout the Company" and "reported…to senior management" also are too vague to infer defendants' scienter.  (AC ¶¶141, 164(d)); *see Sorkin*, 2005 WL 1459735 at *7-8; *Konkol v. Diebold, Inc.*, 590 F.3d 390, 401 (6th Cir. 2009).

Moreover, the Complaint only vaguely describes the contents of many of the reports and a "dashboard." (AC ¶¶ 16-18, 180-83.) Plaintiff's "negative characterizations of reports relied on by insiders, without specific reference to the contents of these reports, are insufficient to meet the heightened pleading requirements of the [Reform Act]." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002). Nor are plaintiff's only details about four reports (*supra* section III(C)(1)) sufficient to plead that defendants "obtained direct knowledge" of integration problems that they fraudulently ignored. (AC ¶ 18); *see Fleming*, 264 F.3d at 1265.[19]

Plaintiff's allegations about both CWs and internal reports, at most, plead the existence of "problems." This is not news: Defendants "recognized it's a challenge," and discussed steps taken to address issues as they arose. (AC ¶ 64; Ex. L at 3; *see also* AC ¶¶ 55, 59, 72-73, 79-80, 87-88, 90-91). Pleading "problems" does not plead fraud, *see Ronconi*, 253 F.3d at 434, especially where plaintiff fails to show that the defendants believed that the alleged integration "problems" were insurmountable. *See In re Syntex Corp. Sec. Lit.*, 95 F.3d 922, 930 (9th Cir. 1996); *Spiegel v. Tenfold Corp.*, 192 F. Supp. 2d 1261, 1266 (D. Utah 2002).

**B.      The Alleged Stock Sales Do Not Support an Inference of Scienter.**

Plaintiff again incorrectly claims that defendants Crowe, O'Hara, Patel, and Miller inflated Level 3's stock price so that they could sell stock during the Class Period. (AC ¶¶ 20, 197-202.) First, the alleged "sales" were, in fact, automatic transactions made on their behalf "to pay withholding taxes" that became due when restrictions lapsed on previously granted restricted

---

[19] Plaintiff's allegations about defendants' executive positions are "[g]eneralized imputations of knowledge [that] do not suffice" to establish scienter. (AC ¶¶ 36, 39); *Fleming*, 264 F.3d at 1263-64. Similarly, Class Period statements about defendants' alleged monitoring of the integration efforts and discussions with customers do not support an inference of scienter. *See, e.g., Konkol*, 590 F.3d at 402; (AC ¶¶ 16, 55, 59, 64, 73, 79-80, 83, 87-88, 184-85; *supra*. section III(C)(2)).

stock units.  (Ex. M at note (1).)  Level 3 and the individuals set up these sales in 2005 and 2006,

before the Class Period.  (Ex. A at ¶ 4 of Exhibit 10.1.)  That the sales occurred automatically

under a pre-determined plan for tax withholding purposes defeats any inference of scienter.  *See*

*In re Sportsline.com Sec. Lit.*, 366 F. Supp. 2d 1159, 1173 (S.D. Fla. 2004); *Metzler*, 540 F.3d at

1067 n.11.  The automatic nature of the sales also undermines any attempt to infer scienter from

the alleged "highly coordinated" timing of sales among the multiple defendants.  (AC ¶ 198.)

Second, and separately, "[c]ourts should not infer fraudulent intent based only on the fact

that some officers sold stock."  *In re Qwest Commc'ns Int'l, Inc. Sec. Lit.*, 396 F. Supp. 2d 1178,

1195 (D. Colo. 2004).  There is nothing suspicious about the sales.  During the Class Period,

defendants sold between one and ten percent of their total holdings, retaining the vast majority of

their shares.  (*See* Hoffman Decl. ¶ 18); *Ronconi*, 253 F.3d at 435-36.  The sales did not occur at

suspicious times.  The sales on May 1, July 2, and October 2, 2007, at an average price of

approximately $5.31, occurred below and after the Class Period high of $6.76 on February 26,

2007.  (*See* AC at 12.)  And between 83% and 93% of the sales occurred not on the eve of the

price decline in October, but many months before, in May and July.  *See* (AC ¶ 199); *In re Party*

*City Sec. Lit.*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001).

### C.     The Other Alleged Generic "Motives" Do Not Support an Inference of Scienter.

Plaintiff again alleges generic "motives" common to all companies and executives:

(1) defendants' cash and equity compensation and (2) defendants' alleged desire to acquire other

companies and refinance credit on favorable terms.  Neither supports an inference of scienter.

### 1.     *The cash and equity compensation allegations are inadequate.*

Defendants Crowe, O'Hara, Patel, and Miller received bonuses for FY06 based on

numerous factors concerning Level 3's overall financial health and operations.  (*See* Ex. J at 15; Ex. O at 21.)  Level 3 established these criteria at the start of FY06, well before the Class Period. (Ex. J at 15.)  Because the bonuses "reward good management," and not "stock performance irrespective of the company's overall financial health," "receipt of such bonuses is an insufficient motive, as it is shared by all company executives."  *McNamara v. Pre-Paid Legal Servs., Inc.*, 189 F. App'x. 702, 715 (10th Cir. 2006); (*see* Ex. J at 15-17; Ex. O at 20-23; AC ¶¶ 192-94).

Plaintiff again claims that the bonuses "tied large portions of [defendants'] compensation directly to the successful integration of WilTel and the acquired businesses."  (AC ¶ 192.)  Yet plaintiff fails to explain how the bonuses were structured to motivate defendants to lie about the integration, as opposed to providing an incentive to successfully manage the integrations.  (Ex. J at 15-17; Ex. O at 20-23 (defendants did not receive a FY07 bonus).)  The bonuses presented generalized motives "possessed by most corporate directors and officers" and do not support an inference of scienter.  *In re BISYS Sec. Lit.*, 397 F. Supp. 2d 430, 444 (S.D.N.Y. 2005).

Similarly, the Tenth Circuit refuses to infer scienter from defendants' alleged desire to protect the value of their shares.  *Fleming*, 264 F.3d at 1269-70; (AC ¶¶ 195-96).  The equity awards provided long-term incentives that did not fully vest for years (Ex. J at 18-19; Ex. O at 23-24), not an incentive to engage in a short-term fraud.

    **2.**  *The allegations about acquisitions and credit refinancing are inadequate.*

Plaintiff again claims that defendants lied about integration issues so that Level 3 could "complete the Broadwing acquisition on more favorable terms" and refinance credit "at more

favorable interest rates."  (AC ¶ 189; *see also id.* ¶¶ 7, 20, 190-91.)[20]

Numerous courts, however, refuse to infer scienter from "generalized motives shared by all companies" to achieve beneficial terms in acquisitions or credit refinancing.  *Fleming,* 264 F.3d at 1269; *see also Adams*, 340 F.3d at 1104-05; *Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001); *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, No. 04-cv-1030-RPM, 2005 WL 4161977, at *13 (D. Colo. Oct. 20, 2005).  The Complaint lacks any particularized facts showing that the alleged misrepresentations permitted the Company to complete the acquisition or refinancing.

Plaintiff again speculates that "Broadwing investors would have likely rejected the proposed transaction," or that "the Broadwing acquisition would have been much more expensive or impossible as a stock transaction," absent defendants' allegedly false statements. (AC ¶ 14.)  Plaintiff similarly speculates that the statements created a "false perception" of positive cash flow in 2008 for a March 2007 credit refinancing.  (AC ¶ 20, *see also id.* ¶¶ 190-91.)  The Complaint's unsupported hypothesizing does not support any inference of scienter.  *See Pirraglia*, 339 F.3d at 1188.

### D.    The Alleged "Admissions" Do Not Support an Inference of Scienter.

Finally, plaintiff again claims that defendants admitted after the Class Period that they knew, but hid, the truth all along.  (AC ¶¶ 96-102, 148-51, 153, 155-61, 186-88.)  Defendants' post-Class Period statements show the opposite.  The "admission" that "we did not monitor detailed operational metrics as closely as we should have...we took our eye off the detailed

---

[20] The Complaint is internally inconsistent.  It alleges that defendants "utilized Level 3's inflated stock price to *make numerous corporate acquisitions*," but also claims that this made the acquisition, largely for cash, "*less expensive*."  (AC ¶¶ 7, 20.)  Moreover, plaintiff's allegations defy logic:  Defendants acquired five companies with Level 3 stock worth approximately $1.2 billion, and undertook a public stock offering, *before the Class Period even began*.  (AC ¶¶ 42, 45-47, 49, 51.)

essential work of end to end provisioning" demonstrates that defendants did *not* know information contrary to the challenged statements during the Class Period.  (AC ¶ 186.) Moreover, none of the "admissions" contradict the challenged statements or constitutes the sort of "I knew it all along" statement that courts require.  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 996-97 (9th Cir. 1999); *see also* (*supra* section III(C)(3); AC ¶¶ 187-88.)

      **E.**    **Viewed in Their Totality, the Allegations Do Not Create a "Cogent" and "Compelling" Inference of Scienter.**

Plaintiff's theory of fraud is not "cogent" or "compelling," particularly when compared to competing inferences.  *Tellabs*, 551 U.S. at 324.  Plaintiff claims that Level 3 spent hundreds of millions of dollars to integrate six acquired companies, but then made decisions designed to scuttle the efforts.  Plaintiff claims that defendants lied about part of one integration, but truthfully reported about other parts and provided accurate financial results and reasonable forecasts.  And plaintiff claims that the defendants did all this without any personal gain.  These claims simply are not plausible, and do not support any inference of scienter.  *See In re FX Energy*, 2009 WL 1812828, at *10; *In re Sun Healthcare Group*, 181 F. Supp. 2d at 1296-97.

## V.    PLAINTIFF ALSO FAILS TO PLEAD LOSS CAUSATION.

Plaintiff fails to plead loss causation, the "causal connection between the material misrepresentation and the loss."  *Dura*, 544 U.S. at 342.  Plaintiff must plead a "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *see also In re Williams Sec. Lit. – WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009).

The Complaint's loss causation allegations again hinge on defendants' July 26 and October 23, 2007 statements.  On July 26, defendants disclosed operational challenges in

provisioning that immaterially affected revenue growth.  (AC ¶ 87.)  On October 23, Level 3: (1) reduced its guidance for the next quarter and fiscal year and (2) disclosed that prior steps taken to improve provisioning proved insufficient to remedy the problems.  (AC ¶ 96.)

These announcements did not reveal the falsity of any prior statements, which disclosed that integration work was ongoing.  (*See, supra*, section III(C).)  For example, the disclosure on October 23 that "provisioning constraints were caused by laying off subject matter experts," is consistent with Class Period statements that realizing "synergies" involved layoffs and that "some inefficiencies will be incurred" as employees learn "new business processes and systems." (AC ¶¶ 58, 64, 72, 79, 98, 208.)  Consistent with prior statements, both the July 26 and the October 23 releases reported that the "the physical network integration" and "physical interconnects" were "progressing well."  (AC ¶ 102; Ex. L at 3.)

Plaintiff cannot contend that the July 26 reported results or the October 23 changed forecast revealed the falsity of any earlier result, forecast, or other statement.  Plaintiff also fails to show that Level 3's July or October stock price drops related to prior statements about integration, rather than to the disclosures about current financial results and forecasts.  The July and October statements instead disclosed the materialization of previously disclosed risks.  *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007); *Lentell*, 396 F.3d at 177; *see also West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, No. 05-cv-01265-WDM-MEH, 2008 WL 4838671, at *6 (D. Colo. Nov. 6, 2008).  (*Supra* section III(B).)  Plaintiff thus fails to plead that the July 26 or October 23 disclosures caused any actionable loss.  *See Lentell*, 396 F.3d at 175 n.4.

## VI.     PLAINTIFF FAILS TO PLEAD A SECTION 20(a) CLAIM.

The Section 20(a) claim also should be dismissed.  Plaintiff fails to establish a "primary violation of the securities laws," what is required for a section 20(a) claim.  *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998).  Plaintiff also fails to "plead the circumstances of the control relationship with particularity," a second element for a Section 20(a) claim.  *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C-99-00109-SBA, 2000 WL 1727377, at *25 (N.D. Cal. Sept. 29, 2000); *Maher*, 144 F.3d at 1305.  Plaintiff does not allege facts showing how defendants Scott or Miller exercised any managerial control over the statements made.  *See Adams*, 340 F.3d at 1108.

## CONCLUSION

For the above reasons, defendants respectfully request that the Court dismiss the Complaint – without allowing plaintiff leave to amend his claims again.  *See, e.g., McNamara*, 189 F. App'x. at 718-19; *Grossman*, 120 F.3d at 1125-26; *Noble Asset Mgmt.*, 2005 WL 4161977, at *14; *Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1187 (D. Colo. 2008).

Dated: April 12, 2010

Respectfully submitted,

s/ Jordan Eth

| | |
|---|---|
| Steven M. Kaufmann | Jordan Eth |
| Brian Neil Hoffman | Morrison & Foerster LLP |
| Morrison & Foerster LLP | 425 Market Street |
| 370 Seventeenth Street, Suite 5200 | San Francisco, CA  94105 |
| Denver, CO  80202 | Telephone:  415.268.7000 |
| Telephone:  303.592.1500 | Facsimile:  415.268.7522 |
| Facsimile:  303.592.1510 | Email:  JEth@mofo.com |
| Email:  SKaufmann@mofo.com | |
|          BHoffman@mofo.com | *Attorneys for defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Kip Brian Shuman | kip@shumanlawfirm.com |
| Rusty Evan Glenn | rusty@shumanlawfirm.com |
| Jeffrey Allen Berens | jeff@dyerberens.com |
| Robert J. Dyer, III | bob@dyerberens.com |
| Lon Angelo Licata | Lon.licata@level3.com |
| Seth A. Katz | skatz@burgsimpson.com |
| David P. Hersh | dhersh@burgsimpson.com |
| Trig Randall Smith | trigs@csgrr.com |
| Julie A. Kearns | jkearns@csgrr.com |
| Kristin A. Martinez | kristin@dyerberens.com |
| Laurie L. Largent | llargent@csgrr.com |
| Henry Rosen | henryr@csgrr.com |
| Albert Y. Chang | albertc@johnsonbottini.com |
| Francis A. Bottini, Jr. | frankb@johnsonbottini.com |

s/ Jordan Eth
      Jordan Eth
      Morrison & Foerster LLP
      425 Market Street
      San Francisco, CA  94105
      Telephone:  415.268.7000
      Facsimile:  415.268.7522
      Email:  JEth@mofo.com

dn-157606