**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-00200-PAB-CBS

*(Consolidated with Civil Action Nos. 09-cv-00215, 09-cv-00296, and 09-cv-00606)*

In re LEVEL 3 COMMUNICATIONS, INC. SECURITIES LITIGATION

---

**REPLY IN SUPPORT OF DEFENDANTS' COMBINED MOTION AND BRIEF TO
DISMISS PLAINTIFF'S AMENDED CONSOLIDATED COMPLAINT**

---

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.     PLAINTIFF DOWNPLAYS THE PLEADING STANDARDS. .......................... 1

II.    THE COMPLAINT REMAINS AN IMPERMISSIBLE "PUZZLE
PLEADING." .......................................................................................................... 2

III.   PLAINTIFF ALSO FAILS TO PLEAD WITH PARTICULARITY A
MATERIAL MISREPRESENTATION OR OMISSION. .................................... 2

    A.    The Challenged Statements Are Immaterial. ............................................... 2

    B.    Defendants Disclosed the Allegedly Omitted Facts. ................................... 5

    C.    Plaintiff Does Not Plead the Falsity of Level 3's Statements. ................... 6

        1.    Plaintiff's allegations do not contradict Level 3's
statements about the WilTel physical integration. ......................... 6

        2.    Plaintiff's allegations do not contradict Level 3's
statements about integrating the metro acquisitions. ................... 10

        3.    Plaintiff's allegations do not contradict Level 3's
statements about its sales and customers. ..................................... 10

        4.    The alleged "admissions" do not contradict Level 3's
statements. .................................................................................... 11

IV.   PLAINTIFF ALSO FAILS TO PLEAD PARTICULARIZED FACTS
CREATING A STRONG INFERENCE OF SCIENTER. .................................. 12

    A.    Plaintiff Fails to Allege Actual Knowledge of the Alleged
Undisclosed Facts. ..................................................................................... 12

    B.    Allegations About Defendants' Executive Positions Do Not Plead
Scienter. ...................................................................................................... 15

    C.    Allegations About the Broadwing Acquisition and a Credit
Refinancing Do Not Plead Scienter. .......................................................... 16

    D.    Allegations About Compensation Do Not Plead Scienter. ...................... 17

E.      Allegations About Stock Sales Do Not Plead Scienter. ........................... 18

V.      PLAINTIFF ALSO FAILS TO PLEAD LOSS CAUSATION. .......................... 19

CONCLUSION ..................................................................................................................... 20

dn-158477

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Kinder-Morgan, Inc.*,
  340 F.3d 1083 (10th Cir. 2003)..................................................................2, 14, 16

*Angres v. Smallworldwide, Plc.*,
  94 F. Supp. 2d 1167 (D. Colo. 2000) ...................................................................11

*City of Philadelphia v. Fleming Cos., Inc.*,
  264 F.3d 1245 (10th Cir. 2001)....................................................1, 2, 15, 16

*Croker v. Carrier Access Corp.*,
  No. 05-cv-01011-LTB-OES, 2006 U.S. Dist. LEXIS 48603
  (D. Colo. July 18, 2006)..................................................................2, 14, 16

*Grossman v. Novell, Inc.*,
  120 F.3d 1112, 1121 (10th Cir. 1997) ...................................................................3

*In re Aetna, Inc. Sec. Lit.*,
  34 F. Supp. 2d 935 (E.D. Pa. 1999) ...................................................................4

*In re Best Buy Co., Inc. Sec. Lit.*,
  No. 03-6193-ADM/AJB, 2005 WL 839099 (D. Minn. Apr. 12, 2005) .....................3

*In re Countrywide Fin. Corp. Deriv. Lit.*,
  554 F. Supp. 2d 1044 (C.D. Cal. 2008) .................................................................18

*In re Countrywide Fin. Corp. Sec. Lit.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008).......................................................16, 18

*In re Countrywide Fin. Corp. Sec. Lit.*,
  No. CV-0705295-MRP (MANx), 2009 WL 943271 (C.D. Cal. Apr. 6, 2009) ........18

*In re Downey Sec. Lit.*,
  No. CV 08-3261-JFW (RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .........12

*In re FX Energy, Inc. Sec. Lit.*,
  2:07-CV-874CW, 2009 WL 1812828 (D. Utah June 25, 2009) ..............................17

*In re Honeywell Int'l, Inc. Sec. Lit.*,
  182 F. Supp. 2d 414 (D.N.J. 2002) ...................................................................3

*In re IAC/InterActiveCorp Sec. Lit.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007) .......................................................... 13

*In re ICG Communc'ns Sec. Lit.*,
   No. 00-CV-1864-REB-BNB, 2006 U.S. Dist. LEXIS 6695 (D. Colo. Feb. 7, 2006) ......... 14, 15

*In re Merck & Co., Inc. Sec., Deriv., and ERISA Lit.*,
   543 F.3d 150 (3d Cir. 2008) .......................................................................... 4

*In re Motorola Sec. Lit.*,
   505 F. Supp. 2d 501 (N.D. Ill. 2007) ............................................................ 20

*In re Nash Finch Co. Sec. Lit.*,
   502 F. Supp. 2d 861 (D. Minn. 2007) .............................................................. 4

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   387 F. Supp. 2d 1130 (D. Colo. 2005) ........................................................... 20

*In re Qwest Communications Int'l, Inc. Sec. Lit.*,
   396 F. Supp. 2d 1178 (D. Colo. 2004) ........................................................... 19

*In re Rhythms Sec. Lit.*,
   300 F. Supp. 2d 1081 (D. Colo. 2004) ........................................................... 15

*In re Secure Computing Corp. Sec. Lit.*,
   184 F. Supp. 2d 980 (N.D. Cal. 2001) ........................................................... 19

*Konkol v. Diebold, Inc.*,
   590 F.3d 390 (6th Cir. 2009) ....................................................................... 13

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ..................................................................... 12

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   513 F.3d 702 (7th Cir. 2008) ....................................................................... 16

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) .................................................................. 6, 19

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) .......................................................................... 4

*Pirraglia v. Novell, Inc.*,
   339 F.3d 1182 (10th Cir. 2003) .................................................................... 17

iv

*Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*,
2 F. Supp. 2d 1345 (D. Colo. 1998). ...................................................................... 16

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................................... 13

*Schaffer v. Evolving Sys., Inc.*,
29 F. Supp. 2d 1213 (D. Colo. 1998) ................................................................... 11

*Schwartz v. Celestial Seasoning, Inc.*,
124 F.3d 1246 (10th Cir. 1997) .............................................................................. 2

*The Sorkin, LLC v. Fischer Imaging Corp.*,
No. 03-cv-631-RPM, 2005 WL 1459735 (D. Colo. June 21, 2005) ................... 12, 13

*West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
No. 05-cv-01265-WDM-MEH, 2008 U.S. Dist. LEXIS 47748 (D. Colo. Mar. 28, 2008)....... 15

*West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
No. 05-cv-01265-WDM-MEH, 2008 U.S. Dist. LEXIS 90278 (D. Colo. Nov. 6, 2008) ........ 19

**STATUTES**

15 U.S.C. § 78u-4 (Private Securities Litigation Reform Act of 1995) ................................ 2, 8, 12

**OTHER AUTHORITIES**

Local Rule 7.1 ............................................................................................................... 20

dn-158477

## INTRODUCTION

Plaintiff's Opposition to Defendants' Combined Motion to Dismiss Plaintiff's Amended Consolidated Complaint (cited as "O," #109) distorts Level 3's actual statements, plaintiff's own Complaint, and governing law.  Plaintiff states that the "focus of this case" is "defendants' false statements assuring investors the WilTel network integration was complete."  (O at 2; *see also id.* at 1.)  *Level 3 never said this*, as even the misleading excerpts of Level 3's statements cited in the Complaint confirm.  In fact, as described in the actual statements that the Complaint cites (sometimes hidden by selective quotation and ellipses), none of which plaintiff contests, Level 3 disclosed both that the physical integration for WilTel was not complete and that systems integration was ongoing and would continue throughout the Class Period.  The confidential witness and internal report allegations do not aid plaintiff, as these allegations nowhere contradict the Company's actual statements.  As for scienter, plaintiff relies on rejected generalized motives shared by all corporate executives and on automatic stock sales.  Plaintiff further fails to show that Level 3's July and October 2007 stock price declines were caused by any revelation of a prior statement's falsity.  The Complaint should be dismissed – without further leave to amend – on multiple grounds.[1]

## ARGUMENT

### I.   PLAINTIFF DOWNPLAYS THE PLEADING STANDARDS.

Although plaintiff faces a "very stringent pleading standard," *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1259 (10th Cir. 2001); (*see also* Motion (#103, cited as "M")

---

[1] Plaintiff does not object to defendants' Motion Requesting Judicial Notice (#106) of the documents attached to, and matters stated in, the Declaration of Brian Hoffman (#104).

at 4-5), he cites the lower standard contained in the pre-Reform Act case *Schwartz v. Celestial Seasoning, Inc.*, 124 F.3d 1246 (10th Cir. 1997). (*See* O at 4-5.)  In fact, the Reform Act "strengthened what is required adequately to plead" *both* falsity and scienter. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).  Plaintiff must allege "specific facts that support" his falsity allegations. *Id.* at 1098.  Plaintiff also must "state with particularity … facts raising a strong inference of intentional or reckless misconduct." *City of Philadelphia*, 264 F.3d at 1258-59.  Plaintiff does not meet these heightened standards.

## II.   THE COMPLAINT REMAINS AN IMPERMISSIBLE "PUZZLE PLEADING."

Plaintiff responds to the Motion's "puzzle pleading" argument in a single footnote, citing *Croker v. Carrier Access Corp.*, No. 05-cv-01011-LTB-OES, 2006 U.S. Dist. LEXIS 48603 (D. Colo. July 18, 2006). (*See* O at 8 n.6.)  *Croker* – a case in which the defendants admitted that they had issued false financial statements, *see* 2006 U.S. Dist. LEXIS 48603 at *11 – did not even discuss "puzzle pleading," but rather whether plaintiffs could proceed based on an "omissions" theory. *See* 2006 U.S. Dist. LEXIS 48603 at *17.  Here, in contrast, plaintiff alleges false statements, and the Complaint forces the Court and the parties to scour a multitude of alleged "true facts" and cross-refer them to alleged internal reports, confidential witnesses, and hundreds of lines of quoted text containing a mixture of bolding and italicizing.  Numerous courts have rejected similar complaints on this ground. (*See* M at 5 (citing cases).)

## III.   PLAINTIFF ALSO FAILS TO PLEAD WITH PARTICULARITY A MATERIAL MISREPRESENTATION OR OMISSION.

### A.   The Challenged Statements Are Immaterial.

The Motion described two ways in which plaintiff's claims are immaterial:  (1) plaintiff does not contest the accuracy of Level 3's financial results or the reasonableness of its publicly

disclosed financial projections; and (2) the challenged statements are "immaterial statements of corporate optimism." (M at 6-7, citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997).) Plaintiff barely responds to the first point, arguing that he need not allege that defendant issued false financial statements. (*See* O at 5 n.3.) True, but irrelevant. Plaintiff here, as in the *Best Buy* case that plaintiff ignores, alleges a host of "problems" with the acquisitions, yet nowhere demonstrates that Level 3 failed to take these problems into account in issuing its quarterly projections to the market (which the Company consistently met during the Class Period). *See In re Best Buy Co., Inc. Sec. Lit.*, No. 03-6193-ADM/AJB, 2005 WL 839099, at *9-10 (D. Minn. Apr. 12, 2005); (M at 2 n.2). Disclosing these "problems" thus would not have significantly changed the "mix of information" available to the public. *See Best Buy*, 2005 WL 839099 at *10. For that reason alone, plaintiff's allegations are immaterial and the Complaint should be dismissed.

Second, as to the statements themselves, plaintiff cites out-of-circuit authority for the proposition that they were "assertions of verifiable fact." (O at 13 and 13 n.8.) Yet the Tenth Circuit, in another case ignored by plaintiff, affirmed dismissal of claims based on statements about an integration that are virtually identical to the challenged statements here. *See Grossman*, 120 F.3d at 1121-22; (M at 7-8). Plaintiff likewise ignores the numerous other courts that have dismissed claims based on similar statements about integrations. (*See* M at 7-8 (citing cases).) In any event, each of the cases that plaintiff cites alleges precisely what is missing here: a link between the alleged undisclosed problems and allegedly false forecasts of financial results. *See In re Honeywell Int'l, Inc. Sec. Lit.*, 182 F. Supp. 2d 414, 419-20, 426 (D.N.J. 2002) ("Because of these many problems defendants knew that their forecasts of EPS, EPS growth and cash flow

3

were false when made."); *In re Nash Finch Co. Sec. Lit.*, 502 F. Supp. 2d 861, 869-70 (D. Minn. 2007); *In re Aetna, Inc. Sec. Lit.*, 34 F. Supp. 2d 935, 944-45 (E.D. Pa. 1999) (finding statements not puffery where they were linked to a forecast of specific financial results). Indeed, plaintiff's cited case *Nash Finch* – referring to the types of statements at issue here – describes the crucial distinction that permitted the allegations in that case to go forward:

> Taken out of context, these statements are "vague and such obvious hyperbole that no reasonable investor would rely upon them." ... However, when analyzed in context, these statements form a portion of press releases or conference calls in which Defendants make specific predictions about growth and earnings per share or specific representations about the procession of the integration. These "puffing" statements are not the crux of Plaintiff's allegations but rather, lend support to Plaintiff's more specific allegations of false statements and fraud on the market. These statements, while not independently actionable, can be considered in context, and as part of Defendants' larger statements, are not immaterial puffery.

502 F. Supp. 2d at 879. Here, in contrast, the puffing statements are all that plaintiff has, as he never contests the reasonableness of any Level 3 financial projection. As there is therefore no "context," the claim is immaterial.

Third, citing Third Circuit authority, plaintiff argues that Level 3's stock price movements in July and October 2007 demonstrate the materiality of defendants' prior statements. (*See* O at 13.) This is not even the rule in the Third Circuit. In that Circuit, stock price movement shows the materiality of the disclosed information. *See Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000); *In re Merck & Co., Inc. Sec., Deriv., and ERISA Lit.*, 543 F.3d 150, 168 (3d Cir. 2008). It does not demonstrate that earlier statements are material. Plaintiff cannot use these stock price movements to show that statements made months before about the integrations' status were material. (*See* M at 7 n.4, 23-24; *infra*. § V.)

Finally, plaintiff argues that Class Period statements "acknowledged the materiality of the statements at issue." (O at 14.) Defendants actually acknowledged the importance of the integration to the business, not the materiality for securities law purposes of particular statements regardless of their content. (*E.g.*, AC ¶ 55; M at 6-7.)

## B.   Defendants Disclosed the Allegedly Omitted Facts.

Plaintiff claims that Level 3 "repeatedly assured the market [that its] integration of WilTel was complete." (O at 1, 7; *see also* M at 8 n.6.) In fact, Level 3 said that it completed a "majority" or "most" of the physical integration for WilTel, and consistently said that systems and other integration work for WilTel was ongoing. (M at 8-10.)

The Motion identified seven instances when Level 3 disclosed ongoing integration work for WilTel, all of which occurred during the same communication as – and often within a sentence or two of – the challenged statements cited in the Complaint. (*See* M at 9-10.) In response, plaintiff says nothing about four of these statements, even though these statements – made in July 25, 2006; February 8, 2007; April 26, 2007; and July 26, 2007 – rebut what plaintiff himself calls the "focus" of his case. (O at 2.) These statements also place into context other statements about the status of the WilTel integration by discussing the ongoing integration and systems work continuing throughout the Class Period. (*See* M at 9-10.) Level 3 explained in these statements that the work would be "difficult to ascribe directly to the integration," but instead would be more "business as usual." (*Id.*)

Rather than address these four statements, plaintiff instead argues that defendants mischaracterize the three remaining of the seven statements (October 17, 2006; October 24, 2006; and December 4, 2006). (*See* O at 2, 14-15.) Plaintiff is flat wrong about at least two of

these statements (October 24 and December 4), both of which expressly refer to ongoing work on WilTel systems integration.  (*See* Ex. E at 5; AC ¶ 64; M at 9.)[2]

Furthermore, plaintiff argues that the Court should ignore Level 3's cautions about the "challenges of successfully integrating acquired companies."  (Ex. H at 7; *see also* M at 10; O at 15-16.)  Plaintiff misses the point:  These cautions are relevant not because they "insulate" defendants from liability, but rather because they too demonstrate that Level 3 disclosed the "heavy lifting" remaining for the integration efforts and the "challenges" that would arise.  (M at 9; AC ¶ 64; *see also* M at 10.)[3]

### C.     Plaintiff Does Not Plead the Falsity of Level 3's Statements.

Plaintiff incorrectly argues that his allegations "directly contradict" Level 3's statements about:  (1) the WilTel physical integration, (2) integrating the metro acquisitions, and (3) the Company's sales and customers.[4]  (O at 8.)

### 1.     *Plaintiff's allegations do not contradict Level 3's statements about the*

_____

[2] The third statement (October 17) likewise refers generally to integration costs and expenditures for all acquisitions.  (Ex. D at 7-8.)  As one part of the four-part question preceding the statement refers to Broadwing, defendants concede that there is some ambiguity on this point.  (*Id.* at 7.)

[3] Plaintiff does not contest that defendants accurately disclosed that integration work was ongoing for the metro and Broadwing acquisitions.  (*See* M at 9 n.7.)

[4] Plaintiff ignores defendants' authority showing that Lead Plaintiff Poppo cannot state a claim challenging statements made after his last purchase of Level 3 stock on July 26, 2007.  (*See* M at 6 n.3.)  Plaintiff also argues that certain analyst statements are also actionable.  (*See* O at 6; AC ¶ 57.)  Plaintiff ignores the authority cited in the Motion (*see* M at 6 n.3) and relies on *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234-35 (9th Cir. 2004).  In that case, however, the analyst statements "simply repeat[ed]" other of the defendants' challenged statements.  *Id.* at 1234.  In contrast, the analyst statements quoted in the Complaint consist of what JP Morgan "assumed," what Jeffries & Company and Merriman Curhan Ford "believe[d]," and what Bear Stearns highlighted and analyzed "based on" other statements.  (AC ¶¶ 57, 60-61, 81.)  Plaintiff does not allege facts showing that defendants were entangled with or placed their imprimatur on these analyst statements.  (*See* M at 6 n.3.)

dn-158477

*WilTel physical integration.*

Plaintiff claims that allegations about confidential witnesses and internal reports "directly contradict" Level 3's statements about parts of the WilTel physical integration being "ahead of schedule," "under budget," and "majority … completed." (AC ¶¶ 54, 58, 72.)[5] In fact, the few specifics that plaintiff cites are *consistent with* Level 3's actual statements. (*See* M at 11-14.)

First, plaintiff claims that CW#1's November 2006 discovery of inaccuracies in WilTel's network inventory data shows that Level 3 was "significantly behind schedule." (O at 6-7; AC ¶¶ 164(b)-(c).)[6] But Level 3's only public statements that it was "ahead of schedule" occurred a month before, in October 2006. (AC ¶¶ 54, 58; *see also* AC ¶¶ 64, 72.) CW#1 claims that in October 2006 "Level 3 believed" that WilTel's data was "first-in-class," (AC ¶ 164(c)), and plaintiff does not allege any facts about the status of Level 3's "schedule" in October 2006. (AC ¶¶ 54, 58; *see also* O at 6-8.) Plaintiff also does not identify any instances after October 2006 when Level 3 said that the WilTel integration was "ahead of schedule."

Second, plaintiff claims that December 2006 and January 2007 reports directly contradict defendants' October 2006 statements that Level 3's WilTel efforts were "under budget." (AC

---

[5] Plaintiff also challenges a statement made in December 2006. Patel stated "[y]ou are right on WilTel, we have generally done, substantially done, by that I mean 85%, 90% done with those efforts." (AC ¶ 64.) Plaintiff does not clarify to what "those efforts" refers. Moreover, this is an off-the-cuff statement by Level 3's CFO, who plaintiff himself alleges was not one of the "small number of key executive officers" that "managed" "Level 3's business throughout the Class Period." (AC ¶ 29.) Plaintiff's challenge to this statement also fails for the same reasons as the other statements.

[6] Despite Level 3's alleged "strict metric-based performance culture," the majority of the allegations attributed to CW#1 consist of unsupported hyperbole lacking any supporting details. (AC ¶¶ 164(f).) For example, plaintiff claims that the integration was "in the earliest stages," "behind schedule," and "an unmitigated disaster," that "data was … highly inaccurate," and that "problems … only grew worse during the Class Period." (AC ¶¶ 109, 164(a), 164(c), 164(d); M at 17-18.)

¶¶ 54, 58; O at 7.)  The December 2006 report allegedly states that Level 3 at that time "had utilized less than half … of the capital that had been allocated" to completing certain physical integration tasks.  (AC ¶ 136; O at 7.)[7]  This confirms, rather than "directly contradicts," Level 3's October statements.  In any event, these reports' discussion about Level 3 increasing the capital devoted to completing WilTel integration efforts in December 2006 and January 2007, says nothing about the Company's performance to budget in October 2006.  (AC ¶¶ 136-37; O at 7.)  As with the "schedule" allegation, plaintiff does not identify any instances after October 2006 when Level 3 said that the WilTel integration was "under budget."  The CW#1 allegations thus are consistent with – and do not "establish[] the falsity" of – the challenged statements about being "under budget."  (O at 7.)

Third, plaintiff claims that three reports directly contradict Level 3's statements that "a majority of the physical network interconnections are completed" for WilTel.  (AC ¶ 58; *see also id.* ¶¶ 54, 72; M at 11-12.)[8]  The December 2006 and January 2007 reports, however, allegedly show only that Level 3 committed additional capital to completing WilTel "interconnects."  (AC ¶¶ 136-37; O at 7.)  This says nothing about how many interconnections remained unfinished.  (*See* M at 11-12.)  The April 2007 report allegedly shows that "Level 3 had yet to complete transport interconnects in 17 major WilTel markets."  (AC ¶ 138; *see also* O at 8.)  But because plaintiff also alleges that WilTel provided access to 50 major markets (AC ¶ 42), his own

---

[7] Plaintiff does not allege facts showing whether the "capital that had been allocated" is the same as Level 3's "budget."  (AC ¶¶ 54, 58, 136.)

[8] Plaintiff does not discuss, though he cites, a fourth report from October 2007, which is even further removed in time from Level 3's statements.  (AC ¶ 139; M at 11-12.)  And plaintiff does not claim that his vague allegations about other reports are sufficiently detailed to satisfy the Reform Act.  (*See* M at 11.)

allegations concede that Level 3 completed 66% of the WilTel markets' interconnections.

The remainder of plaintiff's allegations about the December 2006, January 2007, and April 2007 reports refers to "route integration," which plaintiff himself alleges was a separate task from the "interconnections" discussed in Level 3's challenged statements.  (*See* AC ¶¶54, 58, 72, 107, 136-37; O at 7-8.)  Based on CW#1, plaintiff alleges that Level 3's "network integration" consisted of five separate tasks.  (AC ¶ 107.)  The "building interconnects and capacity" task consisted of "the process of physically joining elements of the network."  (*Id.*)  On the other hand, the "route integration" task consisted of identifying "network redundancies" and "then physically decommission[ing]" those routes.  (*Id.*)  Level 3 consistently disclosed, starting even before the Class Period began, that work on "route integration" would continue throughout the Class Period.  (*See, e.g.,* Ex. B at 5; M at 9, 11-12.)

Finally, plaintiff argues that allegations attributed to CW#2-15 show that Level 3 was not "virtually complete" with WilTel integration efforts.  (O at 9.)  These CW allegations concern Level 3's alleged termination of "virtually all WilTel employees" with knowledge about "WilTel's inventory control and provisioning systems" and various delays and problems in integrating those systems.  (*Id*; AC ¶¶ 165-79.)  Plaintiff claims that, as a result, Level 3 did not "migrate crucial circuit inventory data onto Level 3's platforms during the Class Period."  (O at 9-10.)  These CW allegations, however, are consistent with Level 3's statements that "remaining activities" for integrating WilTel included "ongoing" "system development work."  (AC ¶ 72; *see* M at 8-10.)[9]

---

[9] Likewise, plaintiff's CW#1 allegations about "provisioning problems" are irrelevant to defendants' statements about the status of the WilTel physical integration.  (O at 7; AC

        2.      *Plaintiff's allegations do not contradict Level 3's statements about integrating the metro acquisitions.*

The Motion also demonstrated that plaintiff failed to plead the falsity of three statements about the status of Level 3's integration efforts for the metro acquisitions.  (*See* M at 11-14; AC ¶¶ 72, 79, 87.)  Plaintiff first argues that one of the metro acquisitions, TelCove, "literally operated as a separate company throughout the Class Period."  (O at 10.)  Even if true, this does not contradict Level 3's statements that its metro acquisition integration efforts were "progressing well," and that the Company "made significant progress," but that its efforts were continuing.  (AC ¶¶ 72, 79, 87.)  Nor does plaintiff's argument about "delay[s] [in] the integration of the acquired companies' networks" contradict Level 3's statements that systems integration was ongoing throughout 2007 and that "some inefficiency will be incurred."  (O at 10; AC ¶¶ 58, 64, 72, 79-80, 87; *see also* M at 13 n.13, 14.)

Plaintiff also claims that Level 3 terminated "subject matter experts" knowledgeable about the acquired companies.  (O at 9-10.)  Plaintiff does not claim that this "directly contradict[s]" any of Level 3's statements and does not argue that Level 3 had a duty to disclose staffing decisions.  (*See id.*; M at 10 n.8 and 14 n.14.)

        3.      *Plaintiff's allegations do not contradict Level 3's statements about its sales and customers.*

Level 3's statements that it had "already begun cross selling all products and capabilities to all of our targeted customers" (AC ¶ 72) and that the "overall customer experience is still positive" (AC ¶ 79) are not "directly contradict[ed]" by plaintiff's allegations of provisioning

---

¶¶ 164(d), (f), (h).)  None of the challenged statements discussed "provisioning," and Level 3 consistently disclosed that it operated in a hybrid systems environment and that integration challenges would arise.  (AC ¶¶ 54, 58, 64, 72; M at 9-10.)

dn-158477

delays, isolated customer complaints, and continued use of multiple systems.  (*See* O at 11-12).

Plaintiff ignores the Motion's showing of the insufficiencies of these allegations.  (*See* O at 11-12; M at 13-14.)

Plaintiff relies on two cases to argue that Level 3's challenged statements "obligated [it] to disclose all material adverse facts qualifying those statements."  (O at 11.)  Unlike here, however, the *Schaffer v. Evolving Sys., Inc.* court found a duty to disclose negative financial results because the company had released "only favorable gross revenue and net income figures." 29 F. Supp. 2d 1213, 1218 (D. Colo. 1998).  And *Angres v. Smallworldwide, Plc.* did not discuss a duty to disclose; the court found that allegations showing software was not ready for shipment pled the falsity of statements saying it was.  *See* 94 F. Supp. 2d 1167, 1173 (D. Colo. 2000). Here, in contrast, plaintiff has not alleged facts that contradict Level 3's statements, and Level 3 consistently disclosed that integration work was ongoing and that challenges would arise.  (*See supra,* § III(B).)

       **4.**     *The alleged "admissions" do not contradict Level 3's statements.*

Plaintiff argues that defendants "admitted" the falsity of their Class Period statements. (O at 12.)  They did not.  Defendants' post-Class Period discussions about "service delivery and quality" deteriorations, sales constraints, continued use of legacy systems, and provisioning issues (O at 12) are consistent with Level 3's prior disclosures that its "hybrid systems environment" "will continue through 2008" and could cause "disruption[s] of ongoing business." (*Supra,* § III(B); M at 9-10; Ex. I at 39.)  In any event, none of the alleged "admissions" show that Level 3's prior statements were false when they were made.  Plaintiff's allegations amount to rejected "fraud by hindsight."  (M at 11-13.)

**IV.     PLAINTIFF ALSO FAILS TO PLEAD PARTICULARIZED FACTS CREATING A STRONG INFERENCE OF SCIENTER.**

> **A.     Plaintiff Fails to Allege Actual Knowledge of the Alleged Undisclosed Facts.**

Plaintiff ignores the Motion and argues that the Complaint's "confidential witnesses and documentary sources" establish each defendant's scienter.  (O at 16.)  Plaintiff is wrong.

First, plaintiff claims that defendants "closely monitored" integration efforts through various reports.  (O at 17; AC ¶ 16; M at 18.)  Plaintiff does not allege facts showing that defendants ever personally received or reviewed any information contradicting Level 3's statements.  "Mere access to internal reports does not establish a strong inference of scienter." *The Sorkin, LLC v. Fischer Imaging Corp.*, No. 03-cv-631-RPM, 2005 WL 1459735, *10 (D. Colo. June 21, 2005); *see also In re Downey Sec. Lit.*, No. CV 08-3261-JFW (RZx), 2009 WL 2767670, *12 (C.D. Cal. Aug. 21, 2009).  Nor does plaintiff allege any "specific metrics" contained in the reports.  (AC ¶¶ 135-139; O at 17.)  Plaintiff cannot satisfy the Reform Act's heightened pleading standards by negatively characterizing the contents of the reports.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002).

Plaintiff's only details concern two reports from January and April 2007, which plaintiff claims show that defendants knew that "WilTel's physical network integration was incomplete." (O at 18.)  Level 3 never said otherwise:  It disclosed that the Company completed "most" (but not all) of the WilTel interconnections and that "backbone route consolidation ... will also extend into 2007."  (M at 12; AC ¶ 72; Ex. B at 5; *supra*, § III(B)-(C).)

Second, plaintiff argues that "three major Level 3 customers complained" to O'Hara and Crowe about "delays in Level 3's fulfillment of their orders."  (O at 19.)  The Complaint, however, alleges that O'Hara met with two of the customers "to address their complaints" and

that Crowe spoke to the third on the telephone.  (AC ¶ 184.)  Citing three instances when customers "complained" hardly shows that defendants knew about "widespread customer dissatisfaction with significant delays in the fulfillment of their orders."  (O at 19.)[10]  These "specific examples" are "consistent with unremarkable circumstances," not fraud.  *In re IAC/InterActiveCorp Sec. Lit.*, 478 F. Supp. 2d 574, 593 (S.D.N.Y. 2007); (*see* M at 13-14).

Third, based on CW#1 and CW#4, plaintiff claims that defendant O'Hara attended meetings where "integration delays and provisioning problems were discussed."  (O at 17.)  Plaintiff argues that the Complaint provided "great detail" about these CWs (O at 8), but ignores the Motion's showing that the CWs lack "reliability and personal knowledge."  (M at 17; *see also id.* at 16, 18.)  Plaintiff does not claim that CW#1 or CW#4 ever communicated with any of the defendants.  (AC ¶¶ 145, 164(h).)  Nor does plaintiff identify the numerous layers of management that separate CW#1 and CW#4 from the defendants.  For these reasons alone, the CW allegations fail to establish defendants' scienter.  (*See* M at 16-18.)

In any event, plaintiff does not allege any details about the discussions at the alleged meetings.  (AC ¶¶ 145, 164(h).)  Plaintiff, at most, alleges that O'Hara knew about integration and provisioning "problems."[11]  But the existence of problems does not constitute fraud.  *See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001).  Plaintiff makes no attempt to argue that

_____

[10] Plaintiff also claims that O'Hara conducted "daily meetings regarding customer complaints due to provisioning problems."  (O at 19.)  As with the other alleged meetings discussed below, plaintiff fails to plead any details about the actual discussions at the meetings or how those discussions support a strong inference of scienter.  (*See* M at 18.)

[11] Plaintiff also continues to rely on vague allegations that issues were "widely known throughout the company" and were "reported … to [defendants] on a regular basis."  (AC ¶ 164(d); O at 17.)  These allegations are insufficient to plead a strong inference of scienter.  *See Sorkin*, 2005 WL 1459735 at *7-8; *Konkol v. Diebold, Inc.*, 590 F.3d 390, 401 (6th Cir. 2009).

defendants believed the alleged "problems" were insurmountable (*see* M at 19 (citing cases)), and does not dispute that it is his burden to do so.[12]

In fact, plaintiff's cited cases demonstrate the Complaint's deficiencies.  The plaintiff in one of these cases, *Adams*, specifically identified a witness by name, described multiple conversations between the witness and a named defendant, provided "significant detail" about company documents, and alleged that the outside auditors challenged the accounting treatment of a specified transaction.  340 F.3d 1083, 1103-04 (10th Cir. 2003).

In another case, *Croker,* the court found scienter pled in particular because plaintiff there had alleged specific facts showing that the company's controller told the CEO that recognizing revenue on a transaction would violate GAAP, that the CEO recognized revenue anyway, that the CFO signed the quarterly financials after the controller "resigned in protest," and that the company later restated its financials in large part because of the accounting treatment of this transaction.  2006 U.S. Dist. LEXIS 48603 at *28.

And in *In re ICG Communc'ns Sec. Lit.*, plaintiffs alleged scienter where one defendant received a transcript of a full-day meeting of employees discussing "pervasive problems with ICG's network, and pervasive customer dissatisfaction"; learned about an "onslaught of complaints" and that customers had cancelled "hundreds of thousands of lines"; "ordered that the cancelled lines not be booked until a later date"; knew about "large credits" issued to customers; and ordered that network switches be used, despite being told that they did not work and could not be fixed in a reasonable time.  No. 00-CV-1864-REB-BNB, 2006 U.S. Dist. LEXIS 6695, at

---

[12] CW#1's claim that "Level 3 believed" in the accuracy of WilTel's inventory data at least until November 2006, belies any claim that defendants acted with scienter before that time. (AC ¶ 164(c).)

*18-20, *33, *35-36 (D. Colo. Feb. 7, 2006).[13]

Far from being "[r]emarkably similar," (O at 19), plaintiff's allegations here do not even come close to meeting these standards. (*See supra*, § III.) And plaintiff's failure to allege that the "problems" materially affected the reasonableness of Level 3's publicly disclosed financial projections particularly undermines his attempt to plead scienter. *Cf. City of Philadelphia*, 264 F.3d at 1261; (*supra.*, § III(A).) The allegations are, in fact, "remarkably similar" to ones regularly rejected by courts around the country. (*See* M at 16-18 (citing cases).)[14]

## B. Allegations About Defendants' Executive Positions Do Not Plead Scienter.

The Tenth Circuit has rejected plaintiff's argument that Crowe's, Patel's, and O'Hara's positions as "top Level 3 executives" support an inference of scienter. (O at 19-20.) "Generalized imputations of knowledge do not suffice [to establish scienter], regardless of defendants' positions within the company." *City of Philadelphia*, 264 F.3d at 1263-64.

Plaintiff also argues that defendants "held themselves out to investors as the persons most knowledgeable about the status of the integration." (O at 19.) Defendants' statements, at most,

---

[13] Plaintiff also cites two other cases that greatly differ from the Complaint. In both cases, plaintiffs alleged that the CWs witnessed employees falsely changing the company's internal records at management's specific direction. *See In re Rhythms Sec. Lit.*, 300 F. Supp. 2d 1081, 1088 (D. Colo. 2004); *West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, No. 05-cv-01265-WDM-MEH, 2008 U.S. Dist. LEXIS 47748, at *44-45 (D. Colo. Mar. 28, 2008).

[14] Plaintiff again claims that defendants' alleged post-Class Period "admissions" "support[s]" scienter for prior statements about WilTel. (O at 18 n.14.) But the "admissions" actually show that defendants did not know the "truth" all along. (*See* M at 22-23.) Crowe's July 2008 statement says nothing about WilTel, only that Level 3 continued to use "processes and systems" from "acquired companies." (AC ¶ 159.) Nor does the alleged "admission" say anything about defendants' Class Period knowledge. Crowe's statement is consistent with Class Period disclosures that integration work "will continue through 2008." (*See* M at 8-10.) Plaintiff fails to allege the sort of "I knew it all along" statement that courts require for an "admission" to show scienter for prior statements. (*See* M at 22-23.) Plaintiff's Sixth Circuit case did not involve post-class period admissions. (*See* O at 18 n.14.)

show only that they were involved with "the integration" as a whole.  (*See, e.g.,* AC ¶¶ 55, 59, 64, 73, 79-80, 87-88.)  Plaintiff's reliance on *In re Countrywide Fin. Corp. Sec. Lit.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008), again demonstrates the Complaint's failures.  Unlike here, the *Countrywide* plaintiffs supported their claims about the CEO's "self-proclaimed 'hands on approach'" with "confidential witnesses who could allege first-hand knowledge of the CEO and CFO's practices" and facts showing that executives were "regularly provided detailed exception statistics" that revealed the alleged fraud.  *Id.* at 1190-91, 1193.  Plaintiff's CWs here do not provide similar details.  (*See* AC ¶¶ 164-179; M at 16-18.)  Plaintiff also relies on *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 711 (7th Cir. 2008), but that case did not involve statements from a defendant akin to plaintiff's allegations here.

**C.   Allegations About the Broadwing Acquisition and a Credit Refinancing Do Not Plead Scienter.**

Plaintiff again claims that the Court may infer scienter based on Level 3's Broadwing acquisition and credit refinancing.  (*See* O at 20-21.)  The Tenth Circuit and numerous other courts have refused to infer scienter based on similar transactions.  *See City of Philadelphia*, 264 F.3d at 1269; *Adams*, 340 F.3d at 1104-05; (M at 22 (citing cases)).  Plaintiff ignores these cases and relies on *Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp.*, 2 F. Supp. 2d 1345, 1359 (D. Colo. 1998).  Those plaintiffs provided "particularized allegations" that "describe in detail circumstances that strongly suggest [that] these statements were purposefully made misrepresentations … designed … [to] permit" the defendant to complete the transactions.  *Id.*[15] In contrast, plaintiff provides only unsupported speculation that the Broadwing acquisition and

---

[15] Plaintiff also relies on *Croker*, which is inapplicable because it involved significantly more detailed allegations than plaintiff's here.  *See* 2006 U.S. Dist. LEXIS 48603 at *28.

credit refinancing would not have been possible absent the allegedly false statements.  (*See* O at 20-21.)  These baseless arguments do not support a strong inference of scienter.  *See Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1188 (10th Cir. 2003); (M at 21-22).

Indeed, plaintiff's allegations defy logic.  Plaintiff claims that defendants tricked Broadwing's board of directors into approving the transaction and then were so worried about obtaining shareholder approval that they embarked on a fraudulent scheme to lie about the WilTel integration (which continued months after the Broadwing transaction closed in January 2007).  (*See* O at 20; AC ¶ 14; M at 22.)  Nowhere does plaintiff cite anything to support this wild speculation.

### D.    Allegations About Compensation Do Not Plead Scienter.

Plaintiff argues that the "performance measure[s]" for Crowe's, O'Hara's, Patel's, and Miller's bonuses were tied solely to Level 3's integrations.  (O at 21.)  Even if true, the bonuses would not create a motive to lie, as opposed to an incentive to manage the integrations successfully.  (*See* M at 21.)  The Court, however, should reject plaintiff's misleading characterization of Level 3's proxy statements about the bonuses.  *See In re FX Energy, Inc. Sec. Lit.*, 2:07-CV-874CW, 2009 WL 1812828, *7-8 (D. Utah June 25, 2009).  The proxies show that numerous factors concerning Level 3's overall financial health informed decisions about the bonuses.  (*See* Ex. J at 15, 16 n.15; Ex. O at 21.)  And the factors for the FY06 bonus were established before the Class Period began.  (*See* Ex. J at 15-16.)  These generalized motives do not support an inference of scienter.  (*See* M at 20-21 (citing cases).)  Plaintiff's cited cases differ because they involved compensation tied directly to the matters that were alleged to be

fraudulently stated (stock prices and merger terms).  (*See* O at 17-18.)[16]

Again, plaintiff's allegations do not make sense.  Plaintiff claims that Crowe, O'Hara, Patel, and Miller engaged in a separate scheme to trick Level 3's board of directors into giving these defendants bonuses by lying to the public about the status of the WilTel integration.  More illogical, wild speculation.

### E.    Allegations About Stock Sales Do Not Plead Scienter.

Plaintiff does not question that the Class Period sales occurred automatically on defendants' behalf to pay withholding taxes.  (*See* M at 19-20.)  Plaintiff's reliance on *In re Countrywide Fin. Corp. Deriv. Lit.* is misplaced:  That case involved a pre-determined stock sale plan that defendant could change, and did change, at any time.  *See* 554 F. Supp. 2d 1044, 1068-69 (C.D. Cal. 2008).  Moreover, in *Countrywide*, the court *dismissed* insider trading claims against several defendants who stuck to their trading plans, like here.  *See In re Countrywide Fin. Corp. Sec. Lit.*, No. CV-0705295-MRP (MANx), 2009 WL 943271, *3-4 (C.D. Cal. Apr. 6, 2009).  Only where one defendant changed his trading plan multiple times "at the height of the market," resulting in over $474 million in proceeds, did that court find the trading "suspicious." *Countrywide Deriv. Lit.*, 554 F. Supp. 2d at 1069; *see also Countrywide Sec. Lit.*, 588 F. Supp. 2d at 1188.  Plaintiff does not make any similar claim here.  That no shares were sold in 2006 does not refute the automatic nature of the Class Period sales.  (*See* O at 22.)

Plaintiff instead argues that the October 2 sales occurred "shortly" before declines in Level 3's stock price.  (O at 22.)  That the October sales constituted a small percentage of the

---

[16] Plaintiff does not dispute that defendants' equity compensation fails to support an inference of scienter.  (*See* M at 15-16.)

total Class Period sales further undermines any inference of scienter.  (*See* M at 20; Hoffman Decl. ¶¶ 18, 27.)  Plaintiff does not question the timing of the earlier sales in May and July.  (*See* AC ¶ 199; M at 20.)

The cases cited by plaintiff are inapplicable.  In *In re Qwest Communications Int'l, Inc. Sec. Lit.*, 396 F. Supp. 2d 1178, 1196 (D. Colo. 2004), the Court drew a "fairly weak" inference of scienter from a defendant's sale of 7% of her holdings on one day.[17]  The sales alleged in *In re Secure Computing Corp. Sec. Lit.*, 184 F. Supp. 2d 980, 989 (N.D. Cal. 2001) "were the first sales of any stock by any of the individual Defendants."  And the sales in *Nursing Home Pension Fund*, 380 F. 3d at 1232 "present[ed] a novel situation" due to the "truly astronomical figure" of the proceeds ($900 million).

## V.    PLAINTIFF ALSO FAILS TO PLEAD LOSS CAUSATION.

Neither the July 26 release nor the October 23 release revealed the falsity of any prior statements.[18]  (*See* O at 24; M at 23-24.)  Plaintiff fails to identify a single Class Period statement contradicted by either release.  (*See* O at 24.)  Rather, both the July and October releases, which disclosed Level 3's continuing integration efforts, are consistent with prior statements that this work was ongoing.  (*See supra,* § III(B); M at 8-10.)  Both releases also disclosed matters about Level 3's financial results and forecasts, neither of which plaintiff challenges.  (*See* M at 6-7,

---

[17] Defendant in that case claimed that she sold only 1.98% of her holdings, but the Court apparently credited plaintiff's position that the sale constituted 7% of her holdings.  *In re Qwest*, 396 F. Supp. 2d at 1196.

[18] Plaintiff argues that the *West Palm Beach* court rejected defendants' argument that "loss causation is not well pleaded because risks that materialized were previously disclosed." (O at 23 n. 7; *see also* M at 24.)  In fact, that court found the plaintiff failed to plead loss causation on one of its claims for this very reason.  *See West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, No. 05-cv-01265-WDM-MEH, 2008 U.S. Dist. LEXIS 90278, at *20 (D. Colo. Nov. 6, 2008).

19

24.)  Plaintiff fails to show that the July or October stock price drops related to the challenged statements about integration, rather than to these disclosures about financial results and forecasts.[19]

## CONCLUSION

For the reasons stated in the Motion and this Reply, defendants respectfully request that this Court dismiss the Complaint without leave to amend.  (*See* M at 20.)  Plaintiff's request for leave to amend in his Opposition is inappropriate under Local Rule 7.1.C.

Dated: May 18, 2010

Respectfully submitted,

s/ Jordan Eth

| | |
|---|---|
| Brian Neil Hoffman | Jordan Eth |
| Morrison & Foerster LLP | Morrison & Foerster LLP |
| 370 Seventeenth Street, Suite 5200 | 425 Market Street |
| Denver, CO  80202 | San Francisco, CA  94105 |
| Telephone:  303.592.1500 | Telephone:  415.268.7000 |
| Facsimile:  303.592.1510 | Facsimile:  415.268.7522 |
| Email:  BHoffman@mofo.com | Email:  JEth@mofo.com |

*Attorneys for defendants*

---

[19] Plaintiff's loss causation arguments are not bolstered by defendants' post-Class Period statements.  Those statements provided after-the-fact analyses of Level 3's integration efforts, not discussions of a causal connection between the alleged misrepresentations and stock price drops.  (*See* CC ¶¶ 131, 133-34.)  Plaintiff cites to *In re Motorola Sec. Lit.*, 505 F. Supp. 2d 501, 542-43 (N.D. Ill. 2007), but that case did not involve post-class period statements.

Plaintiff still fails to state a claim against defendants Scott and Miller for two additional reasons.  First, they are not responsible under the group pleading doctrine for statements in Level 3's 3Q06 Form 10-Q or October 17, 2006 call because plaintiff does not show that these defendants became "aware of the [alleged] falsity of the statement[s]."  *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1145 (D. Colo. 2005); (*see also* O at 16 n.11; M at 15 n.15).  Second, plaintiff's Section 20(a) claim against these defendants fails because plaintiff relies on paragraphs that do not provide the required particularity.  (*See* M at 25; O at 25 n.18.)

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Kip Brian Shuman | kip@shumanlawfirm.com |
| Rusty Evan Glenn | rusty@shumanlawfirm.com |
| Jeffrey Allen Berens | jeff@dyerberens.com |
| Robert J. Dyer, III | bob@dyerberens.com |
| Lon Angelo Licata | Lon.licata@level3.com |
| Seth A. Katz | skatz@burgsimpson.com |
| David P. Hersh | dhersh@burgsimpson.com |
| Trig Randall Smith | trigs@csgrr.com |
| Julie A. Kearns | jkearns@csgrr.com |
| Kristin A. Martinez | kristin@dyerberens.com |
| Laurie L. Largent | llargent@csgrr.com |
| Henry Rosen | henryr@csgrr.com |
| Albert Y. Chang | albertc@johnsonbottini.com |
| Francis A. Bottini, Jr. | frankb@johnsonbottini.com |

s/ Jordan Eth

Jordan Eth
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: JEth@mofo.com

dn-158477